## LORINO v. HOLCOMBE et al.
### No. 10125.

Court of Civil Appeals of Texas. Galveston.
Feb. 22, 1934.

Rehearing Denied April 26, 1934.

Charles Murphy and Sewall Myer, both of Houston, for appellant.

R. R. Lewis, W. M. Holland, and Geo. D. Neal, all of Houston, for appellees.

GRAVES, Justice.

This appeal is from an order of the trial court sustaining a general demurrer to the petition therefor, and, without hearing any evidence as to the merits of the matter, refusing the appellant a temporary injunction, pending a final trial of the whole cause, restraining appellees from in the meantime interfering with his possession of stall No. 14 in Houston's City Market. In the suit itself, of which the application for this ad interim writ was merely an ancillary part, he, among other things, declared in effect upon arrangements between the parties whereby this stall was to be rented and improved to the extent of some $5,000 of betterments at his expense, together with the payment by him of $375 back rental due thereon by its preceding tenant, in consideration of which he was to thereafter occupy it for the conduct of his own fish business therein so long as he met all reasonable requirements of the city in connection with such occupation, inclusive of the payment of his rent, along with his maintenance of the fixtures referred to, and his compliance with all reasonable rules and regulations prescribed by the city for the management thereof. After at considerable length averring that he had become entitled to such a tenure under his arrangement with the city for this stall by reason of its having long been the uniform practice, custom, and invariable result to those so renting, using, and improving such stalls to the extent that it had become a right mutually recognized as inhering in the agreement itself from its inception, he further expressly thus declared upon his cause of action for the prayed for writ:

"That at the time the said Lorino was negotiating with the City of Houston for the space it was occupied by a tenant who was in arrears approximately Three Hundred and Seventy Five Dollars ($375.00) on his rent. Said tenant had permitted the space and the fixtures used therein to become in a dilapidated and unsightly condition.

"That the City of Houston, acting by and through its authorized representatives and under the instructions of and with the knowledge, acquiescence and consent of the City Council, represented to plaintiff that the City desired to have said space occupied and improved and new fixtures installed and desired to collect the back rent due thereon and said City of Houston, acting by and through its duly authorized representatives which said representatives were acting under the instructions and with the authority, knowledge, acquiescence and consent of the City Council, agreed, bound and obligated itself that if plaintiff would lease said space and would pay to the City the back rent due by said tenant thereon, which amounted to approximately Three Hundred and Seventy-five Dollars ($375.00) and would improve said space by installing new fixtures and appurtenances and painting and renovating said space, that Plaintiff could occupy said space for as long a period as plaintiff paid the rent therefor and obeyed and conformed to the reasonable rules and regulations of the City governing said City Market.

"That plaintiff agreed thereto and paid to the City said back rent due by the tenant occupying said space prior thereto and plaintiff installed new and modern fixtures and appurtenances and painted and renovated said space in accordance with said agreement, and all of which was satisfactory to the City of Houston, and has since said date paid all rent due thereon and has complied with all reasonable rules and regulations of the City governing said Market and is willing, able and ready to continue so paying said rent and so obeying said reasonable rules and regulations and here now tenders to the City of Houston the full amount of rent due on said space and tenders continued compliance with all of said reasonable rules and regulations.

"That plaintiff entered into the occupancy of said space relying upon said contract and agreement and paid said back rent and installed said new fixtures and appurtenances and painted and renovated said space in full and complete reliance upon said contract and plaintiff would not have done any of these things except upon full reliance of said contract and in the belief that the defendant would continue to comply with said contract and agreement.

"That the City of Houston has never offered and does not now offer in any pleading filed in this cause or in any other manner, to repay nor tender to plaintiff said sum of back rent so paid by plaintiff or any part

thereof, nor to reimburse plaintiff for the expense incurred by plaintiff in renovating and painting and otherwise improving said space or any part thereof, nor has the City of Houston ever offered to repay plaintiff the expense incurred by plaintiff, or any part thereof, in the purchase and installation of new fixtures and appurtenances as herein alleged or for the other losses and damages plaintiff will suffer as a result of the cancellation and rescission of his said lease, such as damages due to the destruction of his business at said place, nor has the City of Houston ever offered in its pleadings filed herein, or in any other manner, to restore the status quo of plaintiff, nor in any other way to do equity in this matter.

"That the larger portion of these improvements, fixtures, etc., cannot be removed from said space by plaintiff and used in any other place and if plaintiff is required to remove the same it will result in great expense and almost total loss to plaintiff.

"Plaintiff says that the City of Houston accepted said back rent with the full knowledge of the facts herein pleaded, and by and under the terms of and in performance of said agreement herein pleaded, said City of Houston permitted, had knowledge of and acquiesced in plaintiff's occupancy of said space since said date and has received the rent due thereon by plaintiff and had permitted, known of, acquiesced in and approved the installation of said new fixtures and appurtenances and the improvement and renovation of said space, at all of said times having knowledge of and being fully advised of the fact that plaintiff in doing all of said things and in incurring all of said expense was relying upon said contract and agreement between plaintiff and the defendant City of Houston herein alleged.

"That at the time this plaintiff rented said space and at all times since then and more especially at the times when this plaintiff incurred the large expense in improving said space and in purchasing and installing the fixtures therefor this plaintiff relied upon the City of Houston's and its duly authorized representative's statements, acts and conduct herein pleaded and expected and believed that he would be allowed to continue to occupy said space so long as he paid the rent therefor and so long as he complied with all reasonable rules and regulations of the City of Houston governing said Market, all of which he has done.

"That the City of Houston knew that this plaintiff was so relying upon said statements, acts and conduct of the City, said acts and conduct, all of which are herein set forth, having been continuously done for a long time prior to the dates hereinbefore referred to.

"That by reason of the facts herein alleged and so long as plaintiff pays the rent on said space and complied with all reasonable rules and regulations of the City of Houston governing the control and management of said City Market, said City of Houston is estopped to cancel or terminate plaintiff's lease on said space and is estopped to require plaintiff to vacate said space and is estopped to in any manner interfere with plaintiff's use and enjoyment of said space.

"That the attempted rule, regulation or decision of the City Council of the City of Houston, to-wit: that plaintiff shall not employ negro clerks and help in the conduct of his business in said space, is unreasonable, unlawful, capricious and arbitrary and void.

"That the City of Houston knew plaintiff was so relying upon said City of Houston's and its duly authorized representatives' words, acts and conduct at the time he rented said space and at the times he purchased and installed said fixtures and at all times subsequent thereto.

"That the said City of Houston by its and its representatives' words, acts and conduct intended that plaintiff should believe that this plaintiff could continue to occupy the space in said City Market for so long a time as this plaintiff paid the rent for said space and complied with the reasonable rules and regulations governing the control and management of said market and said words were spoken and said acts and things were done by the City of Houston and its representatives, acting within the scope of their authority, in order to induce and for the purpose of inducing this plaintiff to rely thereon and this plaintiff did rely thereon and rented and occupied said space and paid said back rent due thereon by said prior tenant and made said improvements and purchased and installed said fixtures and appurtenances, in the belief that plaintiff could continue to occupy said space in said market so long as he paid to the City of Houston the rent therefor and complied with said reasonable rules and regulations, all of which plaintiff has done and is ready, able and willing to continue doing and here now tenders full and complete performance thereof.

"That plaintiff has developed a large and remunerative business and has expended large sums of money in developing said business.

"That by reason of the facts herein alleged if the City of Houston cancels plaintiff's lease on said space and ejects plaintiff therefrom he will suffer great and irreparable injury and damage for which he has no adequate remedy at law.

"Wherefore, Plaintiff prays that this court issue a temporary restraining order, restraining the defendants and each of them from interfering with the possession of the plaintiff of said Stall No. 14, and in any manner interfering with his trade and from compelling him to move and moving said fixtures and that notice be served upon the defendants to show cause why said temporary restraining order should not be continued as a temporary injunction and that on a hearing hereof that said injunction be in all things made permanent, and for his damages, for costs of court, and for such other and further relief as plaintiff might be entitled, for all of which he will ever pray."

Preceding the quoted averments, specific declarations had also been made to the effect that the appellees had on the 25th of October of 1933, without notice to appellant, ordered the cancellation of the rental agreement, and on the next day served him with written notice to vacate the stall and remove all fixtures and merchandise therefrom; that he could not possibly move the fixtures without almost completely destroying the value thereof; that a large part of his customers at the stall involved were negroes, for which reason he had been and still was employing negro clerks for service therein; that these negro clerks did not solicit business from prospective white customers; that stall No. 14 did not solicit white patronage; that the appellees objected to appellant's employing negro clerks; that, because of the fact that appellant employed negro clerks, the appellees, in open and flagrant violation of the Constitutions of the United States and of Texas, passed a motion or resolution attempting to cancel appellant's lease of the stall, as herein alleged; that such action, taken without notice to appellant, is unreasonable, arbitrary, capricious, void, and unconstitutional; that there exists no ordinance or rule preventing such employment of negro clerks, and, if there were, it would be unconstitutional and void; that more than one-half of the city market is vacant, and there exists no need for this particular space for any public use, the sole basis and reason for appellees' attempted action being the employment by appellant of negro clerks.

If true, and that much must be taken for granted as the legal effect of the general demurrer, these averments, to say nothing of the matters of inducement otherwise alleged to have gone on before, in our opinion not only disclose a cause of action for injunctive relief cognizable by the district court, but also one the refusal of which in this instance amounted to an improvidence on the able trial judge's part, notwithstanding the rule that applications for injunction are uniformly subjected to a strict construction. Thomas v. Bunch (Tex. Civ. App.) 41 S.W.(2d) 359; Id., 121 Tex. 225, 49 S.W.(2d) 421.

The valuable betterments appellant was to pay for, put in, and continue throughout his occupancy to maintain being in the nature of fixtures, the specific agreement alleged, in all the attending circumstances, did not create a merely ordinary tenancy at will, revokable at the pleasure of either party, albeit the rental was payable on a monthly basis, but rather the embarkation of the city and himself upon what may at least be likened to a joint enterprise or adventure, in which each had inherent rights and equities the other could not so unilaterally extinguish, as, it is charged, would have been the effect of the summary cancellation and vacation ordered. 25 Tex. Jurisprudence, "Joint Adventures," pars. 2–6, inclusive, and cited cases; 33 Corpus Juris, same title, I–IV, inclusive, especially paragraphs 6, 23, 28, 31, 36, and 84, with cited cases.

Whether or not the analogy to a joint enterprise in the technical sense is entirely complete, if this similitude in legal consequences be permissible, or if otherwise there were rights on appellant's side inherent in, concomitant to, or running with, the sort of rental agreement he thus declares he made with the city, then the availability of equitable aid in his behalf through the court he so appealed to is clear, irrespective of whether he also had a remedy by way of damages that might in part have been set up in defense of a forcible detainer suit in a justice court the city had filed to oust him of his possession after he had so sought injunction in the district court (33 Corpus Juris, p. 867, par. 84, and cited authorities); for it is plain that the limited powers of that inferior tribunal in that kind of a proceeding would not have afforded a legal remedy as full and complete as an injunction, which is the test laid down in our authorities (24 Texas Jurisprudence, "Injunctions," par. 59, and cited cases).

Especially is this rule applied in causes of the character referred to in Texas, where

power to issue injunctions is conferred upon our district courts by constitutional provision reinforced by enabling acts of the Legislature, and where the right of litigants to avail themselves of that authority in all cases in which the powers of inferior courts are inadequate in the sense just cited has long been recognized.

■ It is equally as well settled that in instances where the district court has obtained jurisdiction of a cause by reason of an injunction, it is authorized to retain cognizance of it for all the purposes of the suit to the end that the final merits of the controversy as presented by all parties may be adjudicated. Stein v. Frieberg, 64 Tex. at page 273 and cited authorities. Under the considerations stated, our conclusion that equity will read into these contractual arrangements, regarded as having been first made and then acted under just as appellant says they were, the right upon his part to a hearing on and a determination of his counterclaims before cancellation of the lease and ouster of himself from the premises may properly be permitted seems to us clear. Having so agreed, in part consideration of the $5,375, advance investment he was making in the location for his permanent business, that he might keep the site so long as he further paid his rent and met all reasonable regulatory requirements, presumably to give him a fair opportunity to recoup that expense, as well as to make a profit in addition, the city was bound to observe good faith in at least permitting some time and chance for the attainment of that mutually contemplated objective; hence it could not, within the canons of good conscience and square dealing, arbitrarily and immediately, without notice and extrajudicially, cut off the possibility of its accomplishment, a consequence it must have known might follow such a cancellation as it ordered. 33 Corpus Juris, IV, p. 851, par. 36, and cases noted.

No date having been fixed in the contract for the termination of this tenure, that being left uncertain and contingent, and it further, self-evidently, being a burdensome if not prohibitive one for the appellant if to endure for a short time only, equity would require, in all the other circumstances obtaining, that it remain in force, conformably to the alleged terms of the lease, whereby reasonable opportunity might be afforded for the accomplishment of the purpose intended, and that neither party should undertake, without just cause, to sooner terminate it. 33 Corpus Juris, p. 849, par. 23, with footnote citations.

The order of the district court appealed from will therefore be reversed, and the cause will be remanded, with directions to that court to grant the temporary injunction prayed for, pending a final trial of the whole cause of action on its merits, inclusive of that seeking damages and a permanent injunction, and thereafter to proceed with it as one over which it has full jurisdiction under the allegations of the petition; reversed and remanded, with instructions.

Reversed and remanded, with instructions.

### On Motion for Rehearing.

The able counsel for appellees seem inept in contentions on rehearing to the effect:

(1) That the order herein appealed from was other than one wherein the trial court simply overruled the appellant's application for a temporary injunction, holding that his bill therefor did not state a good cause of action for that relief. The judgment itself appearing in the transcript unmistakably shows that to have been its effect. It was both accelerated into this court and advanced here under the statutes especially providing therefor in cases where preliminary injunctions have been refused or granted. There can therefore be no doubt about the matter, and this court simply reversed that action, holding that, taking the well-pleaded averments as true, as had to be done under the general demurrer on the appeal, a good cause of action for injunctive relief had been stated, and that its refusal amounted in the circumstances to an abuse of a sound discretion on the trial court's part.

(2) That this court held that the rental agreement, so alleged to have been entered into between the appellant and the city, amounted to a joint enterprise to the extent that they had become liable as partners in the adventure. This court made no such holding, as the language of its original opinion plainly shows, simply likening it to that sort of undertaking in legal consequences to the effect that, after having entered into such a special arrangement as was specifically alleged, the city would not be permitted to summarily cancel or unilaterally extinguish all rights of appellant therein without at least doing equity toward him.

■ (3) In insisting that such lease agreement or rental contract as was alleged by appellant could not be entered into by the city except upon some ordinance, motion, or resolution duly passed by its city council, which had not been alleged. This presentment is conclusively answered by article 2, §

10, of the city charter, reading as follows: "*Markets.*—Said city shall have power to establish, lease, maintain, regulate and operate markets and market places, and abattoirs, and to build, own and maintain buildings therefor, and to rent and lease the same." See Charles H. Mayer v. John Kostes et al., 71 S.W.(2d) 398, decided by this court March 1, 1934.

In other respects it is not deemed necessary that enlargement be made upon what was said in the former opinion.

The motion for rehearing has accordingly been overruled.

Overruled.