

# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00023-CV

**ASTIN REDEVELOPMENT GROUP, LLC,**

                                                              **Appellant**

 **v.**

**CITGO PETROLEUM CORP.,**

                                                              **Appellee**

### From the County Court at Law No. 1
### Brazos County, Texas
### Trial Court No. 4975-B

## MEMORANDUM OPINION

Astin Redevelopment Group, LLC owns a commercial building in downtown Bryan, Texas. Citgo Petroleum Corp. leased this commercial office space from Astin to maintain a pipeline control center from which it operates pipelines for transporting petroleum and related products. Astin sought to evict Citgo and filed a forcible entry and detainer action (FED) against Citgo in the justice court. The justice court ruled in favor of Citgo. Astin appealed to the county court at law. After several hearings, the county court at law also ruled in favor of Citgo and awarded Citgo attorney's fees and

out-of-pocket expenses. Because there was no reversible error in the trial court's judgment but the amount of attorney's fees, out-of-pocket expenses, and costs found by the trial court in its Amended Nunc Pro Tunc Findings of Fact and Conclusions of Law differ from what was actually awarded in the trial court's judgment, we modify the amount awarded and affirm the trial court's judgment as modified.

**JURISDICTION**

Astin first contends the trial court, that is, the county court at law, erred in rendering judgment for Citgo because the lease had no fixed end date and was therefore unenforceable. Specifically, Astin wants us to determine that the lease agreement was invalid; and thus, the relationship between the parties was a tenancy at will. The county court at law found that the parties' lease agreement was valid and enforceable.

We questioned whether we have jurisdiction to decide this issue. We also questioned whether the county court at law had jurisdiction to determine whether the lease was valid. Neither party briefed these questions initially; so we asked for supplemental briefing on the issue. We now address that question as one of the issues in this appeal.[1]

---

[1] After supplemental briefing, both parties contend we have jurisdiction of the appeal. Neither party contends that the necessity for the county court at law to determine the validity of the lease is a question of title over which the county court at law had no jurisdiction. We note that implicit in any FED suit there is always the issue of whether the lease or other claim gives the occupier the right to immediate possession notwithstanding there may be a separate suit regarding whether the lease had been breached or the meaning of specific terms in that lease. This case presents a different view of the problem created by the legislature in giving two courts concurrent jurisdiction to address the right of possession in the event the lease must be construed to determine who has that right. The legislature also provided that to the extent the justice court or county court at law necessarily resolves some issues as a precursor to

*Standard of Review*

Whether a trial court has jurisdiction is a question of law subject to de novo review. *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). The jurisdiction of the appellate court as to the merits of a case extends no further than that of the court from which the appeal is taken. *Pearson v. State*, 315 S.W.2d 935, 938 (Tex. 1958). Jurisdiction may be raised for the first time on appeal by the parties *or* by the appellate court. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993); *Aguilar v. Weber*, 72 S.W.3d 729, 731 (Tex. App.—Waco 2002, no pet.).

*Justice Court Jurisdiction in FED*

By statute, a justice court has jurisdiction over a forcible entry and detainer action. TEX. PROP. CODE ANN. § 24.004 (West 2014). The justice court, or county court at law on appeal, cannot, however, resolve any questions of title beyond the immediate right to possession. *Bacon v. Jordan*, 763 S.W.2d 395, 396 (Tex. 1988); *Padilla v. NCJ Dev., Inc.*, 218 S.W.3d 811, 815 (Tex. App.—El Paso 2007, pet. dism'd w.o.j.). Thus, no other issues, controversies or rights of the parties related to the property can be adjudicated in a detainer suit. *Puentes v. Fannie Mae*, 350 S.W.3d 732, 738-39 (Tex. App—El Paso 2011, pet. dism'd). In determining whether a lawsuit involves the adjudication of title, we look to the "gist" of the case after reviewing the plaintiff's pleadings, the answer, and the

---

determining the right to immediate possession, that determination is not binding or given res judicata effect in a district court suit, if any. *See* TEX. CIV. PRAC. & REM. CODE § 31.005 (West 2008).

evidence presented. *Merit Mgmt. Partners I, L.P. v. Noelke*, 266 S.W.3d 637, 647 (Tex. App.—Austin 2008, no pet.).

*The Case*

In its initial Petition for Forcible Detainer filed in the justice court, Astin alleged that the suit was for eviction, that the lease provided for the payment of a monthly rent by Citgo, that Citgo failed to make those monthly payments, and that, as a result, Astin was entitled to immediate possession of the premises. Prior to the filing of the suit, Citgo paid Astin all the rent Astin initially contended was due. The justice court trial was based on Astin's petition and Citgo prevailed. On the day of the trial de novo in the county court at law, Astin amended its petition and added an alternative claim, and was argued as such on appeal, that if the lease commencement date never occurred as Citgo had contended in the justice court, then Citgo was a tenant at will because, as Astin explained in a trial brief filed on the same day, the lease was uncertain as to its duration and afforded Citgo the opportunity to terminate the lease at will. A good portion of Astin's argument at the trial de novo focused on trying to persuade the county court at law judge that the lease was invalid and that a tenancy at will had been created.

In its supplemental brief filed in response to our request for the parties to address the jurisdictional issue, Astin argues that the Texas Supreme Court has directly answered our question, holding that a justice court can construe a lease to determine

who has the right of immediate possession. *See McGlothlin v. Kliebert*, 672 S.W.2d 231, 232 (Tex. 1984). However, the issue in *McGlothlin* was whether the district court could grant a temporary injunction enjoining the proceeding in the justice court by the landowner to evict the tenant, not whether the justice court could hear the tenant's other claims of damages and declaratory relief. Further, the parties in *McGlothlin* were not claiming that the lease was invalid. Thus, the Texas Supreme Court's opinion is not dispositive of our question.

Citgo, in its supplemental brief, also asserts the county court at law had jurisdiction, citing us to several courts of appeals decisions. However, those cases are also not dispositive. None of those courts were asked to invalidate a lease, only interpret it. *See Geters v. Baytown Hous. Auth.*, 430 S.W.3d 578 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Khalilnia v. Fed. Home Loan Mortg. Corp.*, No. 01-12-00573-CV, 2013 Tex. App. LEXIS 2991 (Tex. App.—Houston [1st Dist.] March 21, 2013, pet. denied) (mem. op.); *Effel v. Rosberg*, 360 S.W.3d 626 (Tex. App.—Dallas 2012, no pet.). Further, the question of jurisdiction was not even raised or discussed in two of the cases cited, *Geters* and *Khalilnia*.

Although a leasehold can be an interest in real property in which a dispute over its existence could involve a question of title to real property, *see Merit Mgmt. Partners I, L.P. v. Noelke*, 266 S.W.3d 637, 643 (Tex. App.—Austin 2008, no pet.), we believe that in this case, the county court at law necessarily had to decide whether Citgo was a tenant

under the lease, or whether Citgo was only a tenant at will, to determine who had the right to immediately possess the building. *See e.g., Effel v. Rosberg*, 360 S.W.3d 626, 629-630 (Tex. App.—Dallas 2012, no pet.) (court rejected allegations by lessee that she had a life estate and a lifetime lease deprived the county court at law of jurisdiction). Thus, we hold the county court at law had jurisdiction to make that determination; and we, therefore, have jurisdiction to review that decision.

Accordingly, we proceed to resolve Astin's first issue.

*Law*

A lease may be defined as a grant of an estate in land for a limited term, with conditions attached. *Holcomb v. Lorino*, 79 S.W.2d 307, 310 (Tex. 1935). To create an estate for years, or for any definite term, the lease must be certain, or capable of being made certain, as to the beginning, duration, and termination of the term. *Haley v. Gpm Gas Corp.*, 80 S.W.3d 114, 118 (Tex. App.—Amarillo 2002, no pet.) (*quoting Willis v. Thomas*, 9 S.W.2d 423, 424 (Tex. Civ. App.—San Antonio 1928, writ dism'd w.o.j.)). *See also Hill v. Hunter*, 157 S.W. 247, 252 (Tex. Civ. App.—Austin 1913, writ ref'd). A lease for years may begin, for example, "when a house is suitable to be occupied." *Hill*, 157 S.W. at 252.

All leases for uncertain terms are *prima facia* tenancies at will. *Holcomb*, 79 S.W.2d at 310. A lease will be most strongly construed against the lessor; and where a lease contract is written in plain, clear, and unambiguous language, its construction is a

question to be decided by the court and not by a jury. *Golden Spread Oil, Inc. v. American Petrofina Co.*, 431 S.W.2d 50, 52 (Tex. Civ. App.—Amarillo 1968, writ ref'd n.r.e.).

*The Lease*

The lease between Astin, the lessor, and Citgo, the lessee, provided a beginning date as follows:

> The initial Lease term shall begin on the Commencement Date and, subject to the terms and conditions of this Lease, shall run for sixty (60) months from the "Commencement Date". The Commencement Date shall be the later of the date of Substantial Completion (as hereinafter defined), or July 1, 2011. "Substantial Completion" is defined as the point in time when all Leasehold Improvements have been installed and commissioned by Landlord to the point of being suitable for Tenant's intended use and a certificate of occupancy has been issued by the City of Bryan, Texas for the Leased Premises.

"Leasehold Improvements" were described as "certain modifications that Tenant may specify." Citgo, as the tenant, was responsible for all costs associated with the leasehold improvements. Further, Citgo was not liable for the payment of rent until the Commencement Date.

*Application*

Although Astin now contends the lease was unenforceable because the lease had no fixed or certain end date, its argument is essentially that because the lease term ran for a fixed period from an uncertain *start* date, the term of the lease was indefinite and therefore unenforceable. The start date is uncertain, Astin's argument continues, because it is tied to an event not certain to occur at all. Astin cites several cases in

support of its argument; however, none of these cases describe an uncertain commencement date as is alleged to be the problem in this case. The cases describe an uncertain duration of the lease or an uncertain date for the termination of the lease. *See e.g. Effel v. Rosberg*, 360 S.W.3d 626, 630 (Tex. App.—Dallas 2012, no pet.) (term for a lessee's life is uncertain and creates tenancy at will); *Sherrod v. Powell*, No. 10-10-00173-CV, 2012 Tex. App. LEXIS 1272 (Tex. App. —Waco Feb. 15, 2012, no pet.) (mem. op.) (lease for uncertain length of time creates estate at will); *Providence Land Servs., LLC v. Jones*, 353 S.W.3d 538, 342 (Tex. App.—Eastland 2011, no pet.) (indefinite ending term creates tenancy at will).

In this case, although there is a factual dispute about whether "substantial completion" has occurred, there is nothing indefinite, in a legally relevant sense, about when the lease would commence. The lease specifically provided that the commencement date would occur when Astin completed the leasehold improvements and a certificate of occupancy was issued. The list of what items were to be considered "leasehold improvements" was attached to the lease as Exhibit E. Although the lease does not contain a specific calendar date, it provides sufficiently clear definitions which allow the parties to determine the Commencement Date. *See e.g. Jones, Day, Reavis & Pogue v. Aetna Life Ins. Co.*, No. 05-96-01565-CV, 1998 Tex. App. LEXIS 4344 (Tex. App.—Dallas July 20, 1998, no pet.) (not designated for publication). *See also e.g. STS Gas Servs. v. Seth*, No. 13-05-00463-CV, 2008 Tex. App. LEXIS 366, 14-15 (Tex. App.—Corpus

Christi Jan. 17, 2008, no pet.) (mem. op.).

Accordingly, the lease is not uncertain or invalid; and the trial court did not err in determining that Citgo was entitled to possession under the lease. Astin's first issue is overruled.[2]

### *Fees Supported by Pleadings*

Astin argues in its third issue that the trial court erred in awarding attorney's fees to Citgo because the award was not supported by the pleadings. On the afternoon of the March 19, 2013 hearing, Astin amended its petition for forcible detainer to include, among other items, a request for attorney's fees. Eight minutes later, Citgo amended its original answer, styled "Defendant Citgo Petroleum Corporation's First Amended Motion to Abate, Plea to the Jurisdiction and Alternate Motion to Dismiss, and subject thereto, Its Original Answer," which included a request for attorney's fees. Astin complains that Citgo was not entitled to amend its answer because Citgo did not amend seven days before trial and did not ask the trial court for leave to file its amendment, contrary to Texas Rule of Civil Procedure 63. *See* TEX. R. CIV. P. 63. Thus,

---

[2] Much of the problem in grappling with this issue in this case and on these facts is that Astin argued mutually inconsistent theories. Initially, it presented a straight forward failure-to-pay-rent eviction proceeding in the justice court. However, when Citgo tendered the rent Astin argued was due; Astin was unable to evict Citgo under that theory. Nevertheless, Astin pursued the eviction action and added a new, but inconsistent, theory. The new theory was that the lease, which Astin was also suing to enforce, was not enforceable because of an uncertain start date. Essentially, the county court at law had to decide which theory presented by Astin was correct and then proceed under one of the two theories. Astin prevailed in part on one of the two inconsistent theories presented to the county court at law–that Astin had an enforceable lease with Citgo. Thus, we question whether Astin is in a position to now challenge the trial court's judgment to the extent it found in favor of Astin on this part of one of Astin's theories of recovery. Nevertheless, rather than procedurally default Astin on this issue, we have chosen to address it.

its argument continues, we should ignore Citgo's amended answer and review this issue as if Citgo had not pled for the recovery of attorney's fees.

The ability to recover attorney's fees in a forcible entry and detainer action filed before August 31, 2013 is governed by former Rule of Civil Procedure 752, now found in Rule of Civil Procedure 510.11, and section 24.006 of the Texas Property Code. *See* TEX. R. CIV. P. 752, repealed by Texas Supreme Court, Misc. Docket No. 13-9049, effective August 31, 2013; TEX. R. CIV. P. 510.11, added by Texas Supreme Court, Misc. Docket No. 13-9049, effective August 31, 2013; TEX. PROP. CODE ANN. 24.006 (West 2014). Former Rule 752 provided in relevant part

> On the trial of the case in the county court the appellant or appellee will be permitted to plead, prove and recover his damages, if any, suffered for withholding or defending possession of the premises during the pendency of the appeal. Damages may include but are not limited to … attorney fees in the justice and county courts provided, as to attorney fees, that the requirements of Section 24.006 of the Texas Property Code have been met.

TEX. R. CIV. P. 752, repealed by Texas Supreme Court, Misc. Docket No. 13-9049, effective August 31, 2013. According to the Property Code, a prevailing tenant in "an eviction suit" is entitled to recover reasonable attorney's fees if, as it is in this appeal, a written lease entitles the landlord or the tenant to recover attorney's fees. TEX. PROP. CODE ANN. 24.006(c) (West 2014).

Pleading amendments sought within seven days of the time of trial are to be granted unless there has been a showing of surprise to the opposite party. TEX. R. CIV. P. 63; *Goswami v. Metropolitan Sav. & Loan Asso.*, 751 S.W.2d 487, 490 (Tex. 1988). Rule 63

is to be liberally construed; and, where the record is silent as to any basis to conclude that the amended pleading was not considered by the trial court, and there was no showing of surprise or prejudice, leave of court is presumed. *Lee v. Key West Towers, Inc.*, 783 S.W.2d 586, 588 (Tex. 1989).

Astin acknowledged the filing of, and its possession of, Citgo's amended answer at the beginning of the hearing on March 19. Astin asserted no claim of surprise, nor requested a continuance to respond to the amended answer. The record is silent as to any basis to conclude that the amended pleading was not considered by the trial court. Thus, leave of court to file the amended answer is presumed. Because leave is presumed, Citgo pled for recovery of attorney's fees pursuant to Rule 752. Astin's third issue is overruled.

### Admission of Attorney's Fees Evidence

Astin next argues that the trial court erred in permitting Citgo to present evidence of attorney's fees after trial (issue 5) and thus, because the trial court erred in admitting the evidence, erred in awarding attorney's fees with no evidentiary support admitted at trial (issue 4). Astin contends that the trial had ended at the conclusion of the March 19, 2013 hearing and that because Citgo then failed to move to reopen the evidence, the trial court erred in allowing Citgo to present evidence of its attorney's fees.

When it clearly appears to be necessary to the due administration of justice, the

trial court may permit additional evidence to be offered at any time. TEX. R. CIV. P. 270. In determining whether to permit additional evidence under Rule 270, a court should consider: (1) the movant's diligence in obtaining the additional evidence; (2) the decisiveness of this evidence; (3) whether the reception of the evidence could cause any undue delay; and (4) whether the granting of the motion could cause any injustice. *McCuen v. Huey*, 255 S.W.3d 716, 738 (Tex. App.—Waco 2008, no pet.) (*quoting Saunders v. Lee*, 180 S.W.3d 742, 745 (Tex. App.—Waco 2005, no pet.)). These are just factors to be considered, and even if all of the factors are not satisfied, a trial court's decision to permit the presentation of additional evidence should not be disturbed absent an abuse of discretion. *See Naguib v. Naguib*, 137 S.W.3d 367, 372-373 (Tex. App.—Dallas 2004, pet. denied).

Citgo requested attorney's fees in its amended answer. Even if the March 19 hearing was the entirety of the trial, as Astin argues, Rule 270 permits the trial court to receive additional evidence *at any time*. Citgo filed its motion for attorney's fees on April 5, 2013, less than a month after the March 19 hearing, and a judgment was not signed until October 22, 2013. Citgo explained to the trial court at a continued hearing on attorney's fees that it could not determine all of its attorney's fees until the trial ended. Further, after deciding to permit the presentation of evidence on attorney's fees, Astin was also permitted to present evidence regarding attorney's fees.

Accordingly, we find the trial court did not abuse its discretion in permitting

additional evidence regarding attorney's fees. And, because the trial court did not abuse its discretion in permitting additional evidence, the trial court's award was not lacking evidentiary support. Astin's fourth and fifth issues are overruled.

*Billing Records Considered*

Next, Astin contends the trial court erred in considering billing records of the law firms of *Wright & Close, LLP* and of *Chamberlain, Hrdlicka, White, Williams & Aughtry* when no billing records were admitted into evidence (issue 6) and thus, the evidence is legally insufficient to support the amount of attorney's fees awarded (issue 7). Invoices from both firms were offered into evidence during the May 10, 2013 hearing on attorney's fees. The invoices were not admitted at that time. The invoices were then tendered to the court in Citgo's offer of proof during the continuation of the attorney's fees hearing on September 19, 2013. By letter dated October 21, 2013, the trial court informed the parties that

> I erred in not allowing the invoices for Wright & Close, LLP and Chamberlain, Hrdlicka, White, Williams & Aughtry to be admitted into evidence. Therefore, I am admitting exhibits 2 and 3 into evidence.

Accordingly, because these billing records were admitted into evidence, the trial court did not err in considering them. Astin's sixth issue is overruled. Astin's seventh issue is based solely on its contention that no billing records for *Wright & Close, LLP* and of *Chamberlain, Hrdlicka, White, Williams & Aughtry* were admitted into evidence. Because they were admitted, Astin's seventh issue is overruled.

*Reasonable and Necessary Attorney's Fees*

Astin further contends that the trial court abused its discretion in finding Citgo's attorney's fees to be reasonable and necessary (issue 9); and the evidence was factually insufficient to support the amount awarded (issue 8). Citgo requested $234,269.73 in attorney's fees and $9,054.23 in costs. The trial court awarded Citgo $170,811.73 in attorney's fees and costs. In an Amended Nunc Pro Tunc Findings of Fact and Conclusions of Law, the trial court further reduced the attorney's fees amount, due to an earlier clerical error, to $154,110. No new judgment reflecting the corrected amount of attorney's fees was signed.

In general, the party seeking to recover attorney's fees carries the burden of proof. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). Reasonableness of attorney's fees is ordinarily left to the factfinder, and we may not substitute our own judgment for that of the factfinder. *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009). There are at least eight factors to be considered in determining the reasonableness of attorney's fees. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *see also Young v. Qualls*, 223 S.W.3d 312, 314 (Tex. 2007) (factors also apply to fee awards made by trial courts). However, evidence of each of these factors is not required to support an award of attorney's fees. *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 706 (Tex. App.—Dallas 2008, no pet.).

*Factors*

Astin takes issue with each *Arthur Anderson* factor which we set out below.

*I.  Time and labor required, novelty and difficulty of the questions involved, and skill required to perform the legal service properly*

Several attorneys for Citgo's defense team all testified that this was not the normal forcible entry and detainer action. John Zavitsanos of *Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, P.C.*, (A.Z.A.) stated that he has handled anywhere from 40-50-plus forcible entry and detainer cases and had never had any case like this one. Every issue was disputed. There were mandamus proceedings; issues of abatement between the county court at law and the district court; procedural motions regarding who had jurisdiction, who was going to go first, which case was going to be abated, and what issues were going to be taken up in which court because of the overlap in the issues between this case and the case pending in district court. Zavitsanos' firm "ended up having to review literally 15,000 pages of documents that we culled through and worked on to about 200 exhibits that we offered into evidence in this case." Zavitsanos believed this case involved 20 times the amount of work that a traditional forcible entry and detainer case involves.

Gaines West of *West, Webb, Allbritton & Gentry P.C.*, had been in practice in the Brazos County area for 31 years and had never been involved in a case like this. He confirmed that it was a very complicated case. Further, Russ Hollenbeck, a partner with *Wright & Close* in Houston and an appellate specialist, testified that the issue raised in

the mandamus petition which he prepared for Citgo was a novel, complex issue which required an "intensive" amount of time and labor.

II. *Likelihood that the acceptance of the particular employment will preclude other employment by the lawyer*

The attorneys for Citgo's defense each testified that because of the time frame within which they each had to prepare for the different proceedings under their control, they were precluded from working on any other matter within their respective firms. Zavitsanos also stated that his firm had to reassign a number of their other cases to other lawyers in the firm so that the lawyers working on this case could prepare for trial.

Astin argues that because Citgo's attorneys did not specify exactly what cases or clients they had to turn away due to their work on this case, we should not weigh this factor in Citgo's favor. However, Astin presents no case law which supports its proposition that specific cases and clients must be identified before this factor could be weighed in favor of the reasonableness of the attorney's fees requested.

III. *Fee customarily charged in the locality for similar legal services*

Zavitsanos testified that his fee rate for a case involving the issues that were presented in this case was $550 per hour. The rate for his associate was $275 per hour, and the rate for his senior paralegal was $180 per hour. He also testified that from discussions with other lawyers in Brazos County, the fee rate for a case as complex as this one would range from $250-$600 per hour.

West, local counsel for Citgo, testified that his customary fee rate was $350 per hour. Given the novelty of the issues in this case and the skill and experience required, as well as his familiarity with the local courts and rules, he believed his fees were reasonable and necessary. Further, West testified that when Astin's trial counsel is counsel for the other side in one of his cases, he makes his clients aware that the case "is going to be a costly matter because he [Astin's counsel] is going to raise every possible claim that he can and he is gonna make it as difficult as possible."

Hollenbeck, from *Wright & Close*, testified that he is an appellate specialist and is board certified in civil appellate law. He stated he had personal knowledge and familiarity with the rates charged for appellate attorneys in this region of Texas and would say generally the rates were fairly standard for appellate practitioners who were board-certified. He further stated that his hourly rate was $375 an hour and that that rate was below midline for this area. The rates for another attorney with the firm and an associate, both working on this case, were $365 per hour and $245 per hour, respectively.

Astin called Michael Hoelscher as its attorney's fees expert. Hoelscher testified that from his experience in Brazos County, attorney's fees in Brazos County for attorneys with 20 years of experience could range from $225 an hour to $325 an hour. He was not aware of anyone charging $350 per hour on a regular basis in Brazos County, but it might happen on occasion. He thought that a maximum of $20,000 in

fees in a forcible entry and detainer action might be justified but that $10,000 to $15,000 in attorney's fees would be reasonable and necessary. Hoelscher usually handled forcible entry and detainer cases for landlords and had never had a case where 10,000 pages of emails were produced and had to be sifted through or a case where 200 exhibits were used.

*IV. Amount involved and the results obtained*

As to this factor, Astin contends the attorney's fees were not reasonable and necessary because the total rent for the life of the lease was approximately $250,000 and because Citgo filed many motions and original proceedings on which it did not prevail. However, it was undisputed that Citgo operated a control center in the leased premises to operate its pipelines which transported petroleum and other products in the Citgo network throughout the country. There was also testimony that because this was a pipeline control center, the result of being evicted could potentially cost Citgo tens of millions of dollars and would be disastrous. Although Astin chastised Citgo's attorneys for filing many motions and original proceedings which were unsuccessful, there was no evidence that any of these proceedings were determined by a court to be frivolous.

*V. Time limitations imposed by the client or by the circumstances*

Astin brought its forcible entry and detainer action in the justice court on January 9, 2013. After a hearing on Citgo's motion to abate, the justice court abated the FED on January 29, 2013, pending the resolution of the actions related to Citgo's lease with

Astin filed by both Citgo and Astin in district court. Astin filed a mandamus petition with the county court at law on January 30, 2013 to correct the justice court's order to abate. The mandamus petition was granted and a writ was issued directing the justice court to vacate its abatement order and try the FED action. On February 6, 2013, the justice court dismissed the FED. Then on February 11, 2013, the justice court signed a judgment in favor of Citgo and Astin appealed. According to Astin, the trial *de novo* was scheduled for February 28, 2013, just 17 days after the justice court's judgment.

The *A.Z.A.* law firm was retained a few days before the February 28, 2013 de novo trial date in the county court at law. Zavitsanos then hired Hollenbeck, from *Wright & Close* to prepare Citgo's petition for writ of mandamus questioning the jurisdiction of the county court at law. Both attorneys and their staff were under significant time constraints to evaluate all of the evidence and prepare the motions and original proceedings filed on behalf of Citgo.

VI. *Nature and length of the professional relationship with the client*

The *A.Z.A.* law firm and the *Chamberlain* law firm had established relationships with Citgo. *Close & Wright* and *West, Webb* did not.

VII. *Experience, reputation, and ability of the lawyer or lawyers performing the services*

The primary attorneys from each law firm representing Citgo had at least 20 years' experience, primarily practiced in civil litigation, handled forcible entry and detainer cases, or specialized in appellate law. Each vouched for the abilities of the associates or

other attorneys and staff assisting in the preparation for this case.

> VIII. *Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered*

Citgo was charged an hourly rate by each of the attorneys involved and their staff. There was no evidence that these attorneys would not be paid by Citgo. From the evidence, it also appears that some of the attorney's fees which were related to this matter and charged in the firm's invoices to Citgo were not included in the attorney's fees Citgo sought from Astin.

## *Application*

After reviewing all the testimony and evidence presented, the trial court reduced the hourly rate charged by each of Citgo's attorneys to a rate that was within the range charged in Brazos County. Thus, the amount of attorney's fees awarded was substantially less than that requested.

The thrust of Astin's argument on appeal is that the fees were not reasonable and necessary because Citgo's attorneys filed more documents than necessary and made the case more complicated than it had to be. Further, Astin argues that the fees were not reasonable and necessary because Citgo retained eight attorneys to Astin's one attorney.

There was no finding by any court that Citgo's motions and original proceedings were frivolous. Just as Astin's attorney vigorously represented Astin by, for example, objecting to Citgo's attempted introduction of attorney's fees affidavits and amending Astin's petition on the day of trial to include another ground for evicting Citgo, so too

were Citgo's attorneys vigorously representing Citgo. Simply because Citgo did not persuade the courts to agree with its position in several of its motions or original proceedings does not mean that attorney's fees could not be recouped when Citgo was successful in defending the forcible entry and detainer action filed by Astin. Further, there is no requirement that each party to a lawsuit have equal number of attorneys. That Astin could cause Citgo to believe it needed more attorneys to address the issues raised in this action is more of a recognition of the resourcefulness of Astin's attorney rather than a requirement that Citgo attempt to defend itself with the same number of attorneys.

*Conclusion*

After reviewing the testimony presented at the many hearings in this proceeding in the county court at law and the documents filed in this case and in light of the *Arthur Anderson* factors, there is factually sufficient evidence to support the trial court's judgment for attorney's fees; and we cannot say that the trial court abused its discretion in awarding attorney's fees in that amount as reasonable and necessary. Thus, Astin's eighth and ninth issues are overruled.[3]

Lastly, Astin argues that the trial court erred in awarding Citgo out-of-pocket

---

[3] We nevertheless take notice that the judgment was never amended to reflect the amount of attorney's fees as determined by the trial court in its Amended Nunc Pro Tunc Findings of Fact and Conclusions of Law. Accordingly, we will modify the judgment to reflect the amount of attorney's fees, out-of-pocket expenses, and costs to be $163,164.23 ($154,110 in attorney's fees and $9,054.23 in out-of-pocket expenses and costs) as reflected by the trial court's Amended Nunc Pro Tunc Findings of Fact and Conclusions of Law. *See* TEX. R. APP. P. 43.2(b); *In the Interest of M.D.*, 333 S.W.3d 600, 601 (Tex. App.—Dallas 2007, no pet.).

expenses because neither Rule 752 of the Rules of Civil Procedure nor Section 24.006 of the Property Code provides for the recovery of out-of-pocket expenses. We disagree with Astin's argument.

Rule 752 provides that damages suffered for withholding or defending possession during the appeal to the county court may be pled, proved, and recovered. TEX. R. CIV. P. 752. Such damages include, *but are not limited to*, loss of rentals during the pendency of the appeal, reasonable attorneys' fees in the justice and county courts, and court costs for the prevailing party. *Id*. Thus, damages pursuant to Rule 752 are for expenses and losses related to maintaining or obtaining possession. *Rushing v. Smith*, 630 S.W.2d 498, 500 (Tex. App.—Amarillo 1982, no writ). There is nothing in the record, and Astin cites to nothing, that suggests the expenses awarded were not related to maintaining Citgo's possession of its leased property. Accordingly, the trial court did not err in awarding Citgo it's out-of-pocket expenses. Astin's tenth issue is overruled.

**DECLARATIONS IN JUDGMENT**

In its second issue, Astin contends the trial court erred in making declarations in its judgment other than the right to immediate possession. Astin argues the *effect* of declarations other than possession in a forcible entry and detainer suit. It does not present any argument as to *why* the inclusion of these types of declarations in a judgment is error. Accordingly, this issue is improperly briefed and presents nothing for review. *See* TEX. R. APP. P. 38.1(i). Even if these declarations were error, Astin is not

harmed by such declarations in this proceeding because the findings did not cause the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1) ("No judgment may be reversed…unless the court of appeals concludes that the error complained of…probably caused the rendition of an improper judgment…."). Astin's second issue is overruled.

**CONCLUSION**

Having overruled each of Astin's issues on appeal, but noting a discrepancy between the trial court's judgment and Amended Nunc Pro Tunc Findings of Fact and Conclusions of Law, we modify the trial court's judgment and affirm the judgment as modified.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed as modified
Opinion delivered and filed December 18, 2014
[CV06]

