NO. 07-01-0281-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 29, 2002

_____


J. EVETTS HALEY, JR., AS TRUSTEE OF THE NITA STEWART HALEY TRUST,
AND AS INDEPENDENT EXECUTOR OF THE ESTATE OF J. EVETTS HALEY,
APPELLANT

V.

GPM GAS CORPORATION, APPELLEE


_____

FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;

NO. 30,715; HONORABLE LEE WATERS, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.


By this appeal following a jury trial, appellant J. Evetts Haley, Jr., as Trustee of the

Nita Stewart Haley Trust, and as Independent Executor of the Estate of J. Evetts Haley,

deceased (Haley) presents five issues (restated in our analysis) complaining of the

judgment rendered that he take nothing on his action against GPM Gas Corporation and

granting relief in favor of GPM concerning a five-acre surface lease.[1]  Based on the

rationale expressed herein, we affirm.

On July 11, 1956, Vera Dial Dickey, as lessor, executed a six page written lease

covering the surface of a five acre tract out of Section 50, Block 25, H&GNRR Co. Survey,

Gray County, Texas to Phillips Petroleum Company, as lessee.[2]  As material here,

paragraph 1 of the lease provides

> Lessor does hereby lease and let to Lessee, to use for *any lawful purposes*
> in connection with the erection, maintenance, operation and repair of a gas
> booster station and other appurtenances and facilities useful or proper in
> connection with gas pipe lines (but the uses to be made by lessee shall not
> include the erection or use of any dwellings) . . . .

(Emphasis added).

---

[1]1. Whether the interpretation of an unambiguous surface lease is a question of law for the court? Whether a dispute over the scope of a surface lease is a question of law for the court when the conduct of the parties to the lease is undisputed?
    2. Whether GPM exceeded the scope of a gas booster station surface lease by erecting a 180' radio communications tower to relay information from over 200 wells (located as far as 45 miles away from the tower), when 98% of those wells are not connected to or served by the gas booster station?
    3. Whether a surface lease with an indefinite term is a tenancy at will terminable at the will of either the lessor or lessee?
    4. Whether the District Court erred by failing to submit a question to the jury regarding GPM's trespass on the Haley ranch in connection with the construction and maintenance of the radio communications tower?
    5. Whether the District Court's exclusion of expert and lay testimony regarding the scope of the lease conflicts with the District Court's decision to submit the question of lease interpretation to the jury.

[2]Paragraph four of the lease provided that the lease was assignable and that its provisions would extend to the parties to the lease, their heirs, successors and assigns. Now, Haley is the lessor and GPM is the lessee.

Paragraph 2 of the lease provides:

> This lease shall be for a period of one (1) year from this date, herein called "primary term"; provided, however, that Lessee, its successors and assigns, at their option, may extend and continue this lease in effect for successive periods of one (1) year each thereafter *indefinitely and perpetually* by payment of annual rentals as hereinafter provided. In order to continue this lease in force after the expiration of the primary term, Lessee shall pay or tender to the Lessor on or before one year after this date the sum of Two Hundred Fifty Dollars ($250.00) as advance annual rental, and Lessee shall continue to pay said sum of Two Hundred Fifty Dollars ($250.00) as advance annual rental on or prior to the anniversary date of this lease for each and any year so long as Lessee desires to continue this lease in force.

(Emphasis added). The lease was recorded in the Gray County records and when Haley purchased the land in 1986, GPM was operating a gas booster station and other appurtenances on the leased premises.[3]

After Haley learned that GPM planned to construct a radio repeater tower on the leased premises, he wrote GPM on April 2, 1996, and inquired about its plans. By subsequent letters, Haley expressed his position that the lease did not authorize the construction of the tower. When efforts to arrive at a consensus failed, GPM proceeded with the construction of a radio repeater tower in 1996 on the leased premises for the sole purpose of receiving and relaying to GPM's office radio signals transmitting gas measurement information from electronic flow measurement meters installed at various

---

[3]Haley does not contend that the annual rentals of $250.00 have not been timely paid each year in accordance with paragraph 2 of the lease.

well heads and central points of delivery of gas in the area to enhance the operation of its gas gathering system and pipe lines in the area. Contending that construction of the radio tower was not authorized by the lease and the use and maintenance of the tower constituted a trespass, Haley filed his original petition in September 1997, contending that because the lease was a "tenancy at will" he had terminated the lease and by which he sought damages for trespass, breach of contract, and other relief. By its answer, among other things, GPM contended that the lease was not a "tenancy at will," and sought a declaratory judgment that the lease remained in force and effect, free from interference by Haley.

After considering GPM's motion for summary judgment on May 11, 1998, the trial court signed its order on July 21, 1998, finding, among other things:

> The lease unambiguously granted GPM an annual option to renew the Lease indefinitely and in perpetuity;
>
> Haley's attempts to terminate the lease on the basis that it creates a tenancy at will are invalid, and do not result in termination of the lease; and
>
> A material fact issue existed as to whether GPM's construction of a radio repeater tower on the leased property is within the scope of the lease.

The order concluded:

> IT IS, THEREFORE, ORDERED that partial summary judgment is hereby entered in favor of GPM in that the Lease unambiguously grants GPM an annual option to renew the Lease indefinitely and in perpetuity.

4

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment is denied in its entirety. Plaintiff's attempts to terminate the Lease on the basis that it creates a tenancy at will are invalid and did not terminate the Lease.

IT IS FURTHER ORDERED that a genuine issue of material fact exists as to whether GPM's construction of a radio repeater tower on the Lease property is within the scope of the Lease and is authorized under the Lease.

Then, upon jury trial, based upon the jury's finding that GPM did not fail to comply with the lease agreement by constructing the radio repeater tower, the trial court signed judgment that Haley take nothing by the suit and declared that (1) the lease is valid and remains in full force and effect, (2) GPM has the right to continue to maintain and operate its Lee-Tex Booster, the Tower, and the radio shack located on the lease, and (3) GPM had the right to continue to use the leased premises for any lawful purpose in connection with the erection, maintenance, operation, and repair of a gas booster station and other appurtenances and facilities useful and proper in connection with gas pipelines, provided however, that it continues to elect to pay the successive one-year annual renewal options in accordance with the lease.

Considering appellant's issues in a logical rather than sequential order, we commence our analysis by considering Haley's third issue by which he contends that the booster station lease established a tenancy at will terminable by either party. We disagree. Haley did not allege any fraud, accident, or mistake or contend that the July 11, 1956 agreement did not constitute the entire agreement of the parties. We commence our

5

analysis by reviewing paragraph two of the lease. According to the plain language, the lease was for a fixed term of one year, commencing July 11, 1956. In addition, the agreement granted lessee the option to extend the lease for "successive periods of one (1) year each," so that if lessee timely exercised the option, the lease continued in effect for a subsequent one year term. In Willis v. Thomas, 9 S.W.2d 423, 424 (Tex.Civ.App.–San Antonio 1928, writ dism'd w.o.j.), the court held:

> To create an estate for years, or for any definite term, the lease must be certain, or capable of being made certain, as to the beginning, duration, and termination of the term.

According to the July 11, 1956 agreement, the initial "term" [4] of the lease was July 11, 1956 to July 10, 1957; and upon the exercise of the option by lessee, additional leases with one year "terms" followed. Because each one year term has its beginning and termination date, the July 11, 1956 agreement complies with the rule in *Willis.*

The option allowing lessee to continue the lease in the July 11, 1956 agreement is similar to the provision of the lease considered in Hull v. Quanah Pipeline Corp., 574 S.W.2d 610, 611 (Tex.Civ.App.--San Antonio 1978, writ ref'd n.r.e). In rejecting arguments similar to the contentions of Haley, the court, in part, concluded:

> The lease involved here clearly and specifically shows that it was the intention of both the lessor and the lessee that the lessee should have a

---

[4] Duration of the lease.

6

right of perpetual renewal. . . . The provisions of the lease are plain and unambiguous and they clearly evidence an intent and purpose to create a right of perpetual renewal. The lease is valid and enforceable and the trial court's holdings and findings are correct.

Then, in Philpot v. Fields, 623 S.W.2d 546, 548 (Tex.App.--Texarkana 1982, no writ), after noting that no legitimate reason exists to prevent parties from freely and intelligently contracting for the terms of a lease, the court held that a lease for

a term of 20 years and so long thereafter as the lessee, his heirs, successors or assigns, may use the premises for the purpose of maintaining and operating a LTX separator, tank and other machinery . . .

upon payment of an annual rental of $75.00 was enforceable and did not create a tenancy at will terminable at the will of either party.

Norman, et al. v. Morehouse, et al., 243 S.W. 1104 (Tex.Civ.App.--Amarillo 1922, writ dism'd w.o.j.), cited by Haley, is not controlling because the lease was partially oral and the lessee contended that the lease ran "so long as either of the defendants engaged in the business of making and repairing harnesses, shoes, etc." Here, however, the expiration date of each year lease was specific. Further, we have not overlooked Haley's reference to Holcombe v. Lorino, 124 Tex. 446, 79 S.W.2d 307 (1935). However, the former *Holcombe* opinions, *see* 76 S.W.2d 509 (Tex.Comm'n.App. 1934) and 71 S.W.2d 71 (Tex.Civ.App.--Galveston 1934), taken together also demonstrate that *Holcombe* is not controlling here. Initially, Haley acknowledges that the rental agreement in *Holcombe* was

7

oral, whereas the July 11, 1956 lease was written and recorded. Next, according to the opinion of the Texas Commission of Appeals, 76 S.W.2d at 510, section 922 of the Revised Code of Ordinances for the City of Houston, provided in part, "[a]ll leases or rental contracts shall run from month to month revokable at the pleasure of the mayor or city council," and in October 1933, the mayor and council gave written notice of revocation of the rental contract. In contrast, however, the July 11, 1956 agreement under review here did not give lessor the right to revoke the lease or otherwise avoid the exercise of the option to renew by lessee. Then, according to the opinion of the Court of Civil Appeals in *Holcombe*, 71 S.W.2d at 403, Lorino alleged a tenure for the stall by "reason of its having long been the uniform practice, custom, and invariable result to those so renting, using, and improving such stalls . . . " whereas here the written lease agreement is clear, definite, and specific. Moreover, the Supreme Court discussion is not a general statement of the rule. To the contrary, by its statement, *"[f]or the purposes of this opinion,"* the holding is "case specific" and not applicable here. Moreover, even if applicable, at any given year following July 11, 1956, the duration of the lease was the following July 10, unless extended by lessee's exercise of the option. Accordingly, Haley's third issue is overruled.

By issues one and two,[5] as restated, Haley contends that where the lease is unambiguous and the conduct of the parties is undisputed, the trial court erred by

---

[5]Set out in footnote one.

8

submitting a pure question of law involving interpretation of an unambiguous lease to the jury as a question of fact. We disagree.

At the charge conference, Haley requested that the trial court submit the following breach of contract question:[6]

> Did GPM's actions in building the radio repeater tower constitute a breach of the July 11, 1956 lease agreement?

The trial court refused to submit Haley's requested question, but instead, submitted the question, "Did GPM fail to comply with the lease agreement dated July 11, 1956 by building a radio repeater tower,"[7] to which the jury answered no.

---

[6]Haley also requested the following instruction: In determining whether a breach has been committed, you are instructed that a "breach" is any act which exceeds or passes beyond the bounds of any rights which had been legally granted. For example, where one enters another's property under the authority of an expressed or conditional contract but exceeds the expressed or conditional rights granted in the contract, that person breaches the contract. A conditional or restricted consent to enter land under a contract creates a privilege to do so only insofar as the condition or restriction is complied with pursuant to the terms of the contract. In determining the question of a breach in contract, you are further instructed that the intent is not a factor.

[7]Instruction: You are instructed that "fail to comply with the lease agreement" is any use of the leased property that is not for any lawful purpose in connection with the erection, maintenance, operation and repair of a gas booster station and other appurtenances and facilities useful or proper in connection with gas pipe lines. The court also defined "facility" as something that is built or installed to perform some particular function and an "appurtenance" as an apparatus, equipment, or accessory that belongs to or is attached to something else.

9

Although the record shows that Haley requested that the trial court submit a question to the jury asking whether the construction of the radio tower constituted a breach of the July 11, 1956 agreement, and that the trial court refused Haley's request, the record does not show that Haley objected to the question which asked substantially the same question which the jury answered adverse to Haley. Rule 274 of the Texas Rules of Civil Procedure requires that objections to the charge must point out distinctly the objectionable matter and the grounds of the objection, otherwise the objection is waived. Wal-Mart Stores, Inc. v. McKenzie, 997 S.W.2d 278, 280 (Tex. 1999). Also, in order to preserve a complaint for our review, a party must distinctly specify an objection to the trial court. Tex. R. App. P. 33.1(a); St. Paul Surplus Lines v. Dal-Worth Tank, 917 S.W.2d 29, 45 (Tex. App.--Amarillo 1995), *aff'd in part and rev'd in part,* 974 S.W.2d 51 (Tex. 1998). The purpose of an objection is two-fold: (1) to notify the trial judge and the other party of the complaint; and (2) to preserve the complaint for appellate review. Wilkerson v. PIC Realty Corp., 590 S.W.2d 780, 782 (Tex.Civ.App.--Houston [14th Dist.] 1979, no writ). Moreover, the complaint on appeal must be the same as that presented in the trial court. Edward v. Texas Employment Com'n, 936 S.W.2d 462, 466 (Tex.App.--Fort Worth 1996, no writ). Because Haley did not object to the charge on the ground that it submitted a pure question of law involving interpretation of an unambiguous lease to the jury, the error was not preserved and nothing is presented for review. Further, because Haley requested that the trial court include substantially the same question in the charge to the jury, Haley's contention is barred by the doctrine of invited error, which is an equitable doctrine well

10

established in Texas jurisprudence. *See* General Chemical Corp. v. De La Lastra, 852 S.W.2d 916, 920 (Tex. 1993), *cert. dism'd*, 510 U.S. 985, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993). Accordingly issues one and two present nothing for review and are overruled.

By his fifth issue, Haley contends the trial court erred in excluding expert and lay testimony regarding the scope of the lease that conflicts with the District Court's decision to submit the question of lease interpretation to the jury. We disagree. Regarding the exclusion of evidence offered by J. Evetts Haley, Jr. and Jeff Haley as non-expert witnesses, the brief does not reference the record where a bill of exceptions is located in the record and we have found none. Because the suggested testimony of these two witnesses was not presented by bill of exception, no error is preserved for our review. *See* Tex. R. App. P. 33.2; Hartford Ins. Co. v. Jiminez, 814 S.W.2d 551, 552 (Tex.App.--Houston [1st Dist.] 1991, no writ).

Haley also contends the trial court erred in excluding the testimony of attorney Tom Scott as an expert to testify that the construction of the radio tower was not within the scope of the lease agreement, which is presented by bill of exception. During the pre-trial conference on the day of trial, among other things, by reviewing the discovery documents, counsel for GPM, demonstrated that Tom Scott had not been designated as an expert witness and should not be permitted to testify.

Rule 193.6(a) of the Texas Rules of Civil Procedure provides in part:

11

(a) *Exclusion of Evidence and Exceptions.* A party who fails to make, amend, or supplement a discovery response in a timely manner may not . . . offer the testimony of a witness . . . who was not timely identified, unless the court finds that:

>(1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or

>(2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

Under subparagraph (b) the burden of establishing good cause or lack of surprise is on the proponent of the witness and a finding of good cause or the absence of unfair surprise must be supported by the record. Also, subparagraph (c) provides that the trial court may grant a continuance so that the opposing party may conduct discovery. In applying Rule 193.6, in Snider v. Stanley, 44 S.W.3d 713, 715 (Tex.App.--Beaumont 2001, pet. denied), noting that the opposing party had not had the opportunity to take the deposition of the expert witness, the court upheld the decision of the trial court to exclude the testimony of the expert witness not timely designated. Also, the court held that the denial of the motion for continuance was not an abuse of discretion.

Although the trial court excluded Scott's testimony, Haley's brief does not address the ruling of the trial court, and does not contend that the trial court erred in excluding the testimony under Rule 193.6. Moreover, Haley does not make any reference to the record which demonstrates good cause or that the absence of unfair surprise is supported by the

12

record.  Accordingly, we conclude the trial court did not err in excluding the testimony of the non-designated expert witness.  Issue five is overruled.

By his fourth issue, Haley contends the trial court erred by failing to submit a question to the jury regarding GPM's trespass on the Haley ranch in connection with the construction of the maintenance of the radio communications tower.  In this regard, because the jury found that GPM did not fail to comply with the lease agreement by building the radio repeater tower, and we have overruled issues one and two above, the question is moot and our consideration of this issue is not necessary to our disposition.  Tex. R. App. P. 47.1.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Publish.