

| | § | |
|---|---|---|
| JOE FRANK MUZQUIZ/PARA TODOS, INC., | § | No. 08-19-00005-CV |
| | § | Appeal from the |
| Appellant/Cross-Appellant, | § | 17th District Court |
| v. | § | of Tarrant County, Texas |
| PARA TODOS, INC./JOE FRANK MUZQUIZ, | § | (TC#017-287752-16) |
| | § | |
| Appellee/Cross-Appellee. | § | |

## **O P I N I O N**

This is an appeal and cross-appeal from a final judgment rendered by the trial court largely in favor of Appellee, Para Todos, Inc. Appellant Joe Muzquiz attempted to terminate a lease in which the term is purportedly "in perpetuity" and renegotiate it with his lessee, Para Todos. When Para Todos refused, Muzquiz filed a declaratory judgment action and breach of contract claim, seeking a declaration of his rights as lessor under a lease which, as written, contains a perpetual lease term, was terminable only at the will of Para Todos except in the event of default, contained no provision for increasing the rent amount, and required Muzquiz to pay for property taxes, insurance, and common area maintenance.

Following a bench trial, the trial court found, among other things, the parties intended to create a lease with a right of perpetual renewal, the lease language did not create a tenancy at will, and Muzquiz failed to meet his burden to prove unconscionability or the lease violated public policy. The trial court also found Para Todos failed to meet its burden of proving Muzquiz's claims were barred by the statute of limitations. Muzquiz and Para Todos, Inc. appeal.

## BACKGROUND

Leticia Grimaldo and her late husband purchased the Arlington property at issue in this appeal in the 1960s.[1] When they purchased the property located at 4713 Camp Bowie Rd. (the Property), it included a commercial building partially occupied by a restaurant. Over time, the restaurant expanded into the commercial space. At the present time, the restaurant occupies the entire building except for a small portion which houses a salon. In 1999, Para Todos began occupying the restaurant space without a lease. The restaurant's prior occupants also operated in the space without a lease.

### *The Lease*

In 2003, Para Todos and Ms. Grimaldo executed a lease (the Lease) for the restaurant space. Robert Self, Para Todos' owner, prepared the lease form and presented it to Ms. Grimaldo.[2] When Ms. Grimaldo executed the Lease, she was eighty years old and in "okay" health, according to her son, Appellant, Frank Muzquiz. Muzquiz testified his mother did not hire an attorney to review the lease prior to her signing it, but admitted she could have hired an attorney if she had so chosen. Pursuant to the lease, Para Todos rents ninety-two percent of the building's square footage and pays $27,000 in rent each year. The remaining portion of the building is rented to the salon, which pays $1,200 in rent each month.

The following provisions in the lease are relevant in this appeal:

> 2. TERM: Subject to and upon the conditions set forth herein, the term of this lease shall commence on . . . June 1, 2003 and shall be perpetual and terminable at Lessee's sole discretion upon thirty days written notice to Lessor. Lessor's assignees, assigns, heirs and executives are hereby bound, and Lessor

---

[1] This case was transferred from our sister court in Fort Worth pursuant to the Texas Supreme Court's docket equalization efforts. See TEX.GOV'T CODE ANN. § 73.001. We follow the precedents of the Fort Worth Court to the extent they might conflict with our own. See TEX.R.APP.P. 41.3.

[2] A fact issue exists regarding whether Mr. Self drafted the lease himself or simply obtained a form which he used to base their agreement on. However, there is no dispute among the parties that the Lease was procured by Mr. Self and Ms. Grimaldo did not participate in drafting it.

agrees that same are bound, by the terms hereof. Lessee shall continuously use and occupy the leased premises for use as a restaurant and for such other lawful purposes as Lessee desires.

.        .        .

7.    REPAIRS AND MAINTENANCE: Lessor shall be responsible for all external walls, roof and front parking lot of leased premises.

.        .        .

8.    ASSIGNMENT OR SUBLEASE: Lessor shall have the right to transfer in assign, in whole or in part, its rights and obligations in the Building and property that are the subject of this lease. Lessee shall have the right to assign this lease or sublet all or any part of the leased premises without the prior written consent of Lessor.

.        .        .

15.    FIRE AND CASUALTY DAMAGE: Lessor shall, at all times during the term of this lease, at Lessor's expense, maintain a policy or policies of insurance, insuring the Building against loss or damage by fire.[3]

Muzquiz was unaware of the terms of the Lease until 2010 when his mother asked him to review it. Muzquiz testified Ms. Grimaldo wanted to know if she could raise Para Todos' rent. Muzquiz found an attorney to review the lease to ascertain the validity of the lease. The attorney told Muzquiz, on December 28, 2010, he was "still doing research on the question of whether the lease with the Original restaurant can be enforced or not. I will let you know as soon as I come to a conclusion." No answer was ever provided to Muzquiz.

Ms. Grimaldo passed away in 2014. Muzquiz inherited her entire estate, including the Property, subject to the Lease. Muzquiz engaged a different lawyer to determine if he could raise Para Todos' rent or terminate the lease. On October 26, 2015, Muzquiz's attorney contacted Para Todos and informed them the Lease was unenforceable and requested the parties renegotiate the lease.

---

[3] The Lease is silent on which party is obligated to pay property taxes, which, in effect, leaves the burden on the property owner. In this case, the property owner has paid the property taxes since the Lease's inception.

3

### *Procedural History and Trial Testimony*

Muzquiz filed his original petition on September 27, 2016. He filed a second amended original petition on December 7, 2017 (the Petition), which was his live pleading at the time of trial. In the petition, he asks for the following:[4]

> 9. Pursuant to Section 37.001 *et. seq.* of the Texas Civil Practice and Remedies Code, Plaintiff asks this court to declare the rights, status and other legal relations between the parties to this suit arising out of the Lease and to declare the Lease terminable at will or to declare the Lease unenforceable.
>
> 10. Plaintiff would show the following grounds for the relief sought:
>
> > a. The Lease is unconscionable. The Lease is unconscionable because it is unfair due to its overall one-sidedness or the gross one-sidedness of one or more of its terms.
> >
> > b. The Lease is terminable at will. The Lease is clearly terminable at the will of the Lessee. Texas law is clear that a lease that is terminable at will by one party is terminable at will by the other.
> >
> > c. Perpetual Leases Are Not Enforceable in Texas. The Texas Supreme Court has determined that such leases are terminable at will by either party.
> >
> > d. The Lease is void as against public policy. The law does not favor perpetual rights. It would be contrary to the public policy of this state to enforce agreements which have no end but place increasing burdens on one party only.

Para Todos filed its answer and asserted the affirmative defense of limitations, in addition to counterclaims which are not a subject of this appeal. Both sides later filed motions for summary judgment on their respective claims, which the trial court denied.

The parties agreed to a bench trial. Muzquiz testified 92 percent the 2018 property tax and insurance on the Property, which corresponds with the portion of square footage occupied by Para Todos and which the Lease requires him to pay, was approximately $26,000. According to

---

[4] Muzquiz asserted other causes of action against Para Todos for which it received adverse rulings at trial, but which are not the subject of this appeal.

Muzquiz, property taxes have escalated steadily since 2003, and he expects they will continue to increase. Muzquiz's son, who assists him with maintenance on the property, testified he anticipates having to replace the roof within ten years at an estimated cost of $100,000. He also testified the parking lot needs repairs which will cost $20,000.

In its final judgment, the trial court found Muzquiz's claims for declaratory relief were not barred by limitations. It further declared as follows:

1. The Lease does not create a tenancy at will.

2. The provisions of the Lease are plain and unambiguous and evidence an intent and purpose to create a right of perpetual renewal.

3. The Lease is not unenforceable or void because it contains a perpetual term.

4. Plaintiff did not meet his burden of proof that the lease is unconscionable.

5. Plaintiff did not meet his burden of proof that the lease is void as against public policy.

Muzquiz timely filed a notice of appeal, and Para Todos timely filed its notice of cross-appeal.

## DISCUSSION

We first consider Muzquiz's three issues on appeal:

1. Did the trial court err by finding that a perpetual *renewal* lease is a valid exception to the undisputed rule that a perpetual *term* lease is not enforceable when there is no discernable difference between the two?

2. Did the trial court err in finding that the parties intended to create a perpetual *renewal* lease, instead of a perpetual *term* lease, when the only evidence in the record of the parties' intent is the lease itself, which unambiguously states that the term shall be perpetual?

3. Did the trial court err in finding that the lease does not violate public policy, even though it binds the lessor and his heirs to pay escalating property taxes and maintain the property, for eternity, but also prohibits the rent from ever being adjusted beyond the initial amount that was set in 2003?

### *Standard of Review*

5

Interpretation of a contract is reviewed by an appellate court *de novo*. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018). Our "primary concern" in construing a contract's language "is to give effect to the written expression of the parties' intent." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994).

### *Perpetual initial term versus Perpetual renewal term*

Muzquiz asserts the "undisputed rule" is perpetual leases are unenforceable. However, our review of Texas law finds leases which renew in perpetuity are disfavored but upheld when a lease's language clearly indicates the parties' intent to create such an obligation. *See Hull v. Quanah Pipeline Corp.*, 574 S.W.2d 610, 612 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.). On the other hand, leases with a perpetual term are not, *per se*, unenforceable. *See, e.g. Philpot v. Fields*, 633 S.W.2d 546 (Tex.App.—Texarkana 1982, no writ). Rather, leases with *indefinite initial* terms are treated as terminable at will by either party. *See, e.g. Holcombe v. Lorino*, 79 S.W.2d 307, 310 (Tex. 1935)(lease with perpetual initial term deemed terminable at will by either party)*; Effel v. Rosberg*, 360 S.W.3d 626, 630-31 (Tex.App.—Dallas 2012, no pet.)(lease with indefinite initial term based on life of tenant deemed terminable at will by either party).

This distinction necessarily begs the question, is the Lease's *initial* term indefinite or is it a term which renews in perpetuity?

### **Appellant's First and Second Issues: Perpetual Leases**

We first consider Muzquiz's second issue. Specifically, whether the trial court erred in finding the parties intended to create a perpetual renewal lease, as opposed to a perpetual *initial* term lease. We find the trial court erred in finding the parties intended to create a lease with a perpetual renewal term and sustain Muzquiz's second issue.

### *Rule Against Perpetuities*

6

The backdrop to our analysis of Muzquiz's appeal is Texas's Rule Against Perpetuities (the Rule). The Texas Constitution contains a prohibition against perpetuities and monopolies in Article I, Section 26, which states in pertinent part, "Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed[.]" TEX.CONST. art. I, § 26. The Rule is a product of English common law which found its way into the Texas Constitution's Bill of Rights when the Republic was founded in 1836. *See id.* (2007 commentary). The Rule is intended to prevent the non-alienability of property interests, a problem endemic in feudal Europe and one which new Americans sought to prevent by incorporating the Rule into its laws. *See Elkins v. Sears, Roebuck and Co.*, Civil Action No. H-04-4629, 2008 WL 2465344, at *2 (S.D. Tex. June 17, 2008).

At common law, the Rule states, "no interest within its scope is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest[.]" *Kelly v. Womack*, 153 Tex. 371, 375 (1954). As our sister court in Texarkana set out in *Caruso v. Young*, 582 S.W.3d 634, 638 (Tex.App.—Texarkana 2019, no pet.), "[t]he word 'vest' in regards to the Rule refers to an immediate, fixed right of present or future enjoyment of the interest.". . . "The Rule does not apply to present or future interests that vest at their creation." *Id.* [Citations omitted]; *see also Conoco Phillips Company v. Koopmann*, 547 S.W.3d 858, 867 (Tex. 2018).

Leasehold interests, generally, are subject to the Rule. 70 C.J.S. *Perpetuities* § 23 (2021). However, a lease taking effect *presently* for a set term, even when the term exceeds the time allowed by the Rule, does not violate the Rule because it conveys only present, and not future, interests. *See id.*, (*citing Ponder v. Southwestern Hotel Co.*, 114 S.W.2d 319 (Tex.Civ.App.—El Paso 1938, writ dism'd)(where a lease for a term of 99 years did not violate Rule). Additionally, some rights conveyed within a lease such as a right to purchase or right to renew, even if they do not vest until a time outside of what would normally be allowed by the Rule, do not violate the

7

Rule so long as they vest at a time not longer than the initial term of the lease. *See, e.g.*, *Ezer v. Texas Tower Ltd.*, No. H-13-1805, 2014 WL 3669222, at *5 (S.D. Tex. July 22, 2014)(mem. op. and order)(*citing Hull*, 574 S.W.2d at 612); *Elkins,* WL 2465344, at *2-3 (option to purchase property within a lease). Thus, although leases in perpetuity are generally enforced by the courts and not found to violate the Rule, they are disfavored because of Texas' longstanding distaste for perpetual property rights. *See Hull*, 574 S.W.2d at 612. Accordingly, absent express language granting a right of perpetual renewal, a lease will not be construed as granting such right. *Hull*, 574 S.W.2d at 612; *see also Ezer*, 2014 WL 3669222, at *5; *Elkins*, 2008 WL 2465344, at *2-3 (applying similar reasoning to options to purchase within a lease).

### *Perpetual Leases*

*Hull* is a seminal case in our discussion of perpetual leases. There, the plaintiffs owned a piece of land which they leased to a pipeline company for an initial term of one year. *Id.* at 611. The lease at issue contained a renewal provision granting the lessee the "indefeasible option" of extending the initial yearly term "for an additional year and from year to year to year thereafter for the same consideration and under the same terms and conditions as set forth" in the lease, "so long as used for the above purposes and the annual rental is paid for the use thereof[.]" *Id.* The stated purpose of the lease is not contained in the opinion, but it is logical to assume it was related to oil and gas activities. The Texarkana court in *Hull* acknowledged the dearth of case law on the issue and adopted the following rule which states as follows:

> Although there is some contrary authority, the generally accepted view is that a provision clearly giving the lessee and his assigns the right to perpetual renewals is valid in the absence of some statutory prohibition, and will be enforced by the courts, although such a provision in a lease is not favored by the courts, and a lease will be construed as not making such a provision unless it does so clearly.
>
> It has been generally held that a provision in a lease for perpetual renewal is not violative either of the rule against perpetuities or of statutes limiting the period

8

during which the absolute power of alienation may be suspended. The reason for this is that the covenant to renew may be taken as part of the lessee's present interest. It is obvious that a perpetual lease, or a lease containing a covenant for perpetual renewal, is not a restraint or limitation upon the power of alienation of the fee, for there are at all times persons in being who, by joining, can convey the fee.

*Hull*, 574 S.W.2d at 612, (*quoting* 50 AM.JUR.2d *Landlord and Tenant* § 1169 (1970)).

In *Philpot v. Fields*, 633 S.W.2d 546 (Tex.App.—Texarkana 1982, no writ), the parties signed a lease with a term of twenty years and:

[S]o long thereafter as the lessee, his heirs, successors or assigns, may use the premises for the purpose of maintaining and operating a LTX separator, tanks and other machinery, appliances, and equipment in connection with the processing, refining, treating, and storing of natural gas and its derivatives, or other petroleum products.

*Id.* at 547. The appellant sought to have the lease declared a tenancy at will due to the alleged indefiniteness of the renewal period. *Id.* at 547-48. The court acknowledged, "when one holds premises for an uncertain time, he is generally held to be a tenant at will *unless the lease makes reference to some certainty*." *Id.* at 547 [Emphasis added]. However, because the express language in the lease reflected the intent of the parties to create a perpetual right to lease the land, *and* because the lease duration after the twenty-year initial term was "tied to the cessation of the use of the land for certain definitely ascertainable purposes"—maintaining and operating various specific equipment related to natural gas processing—the lease was enforceable as written. *Id.* at 548.

In *Haley v. GPM Gas Corp.*, 80 S.W.3d 114 (Tex.App.—Amarillo 2002, no pet.), a lessor executed a surface lease with an initial one-year term with an option for the lessee to renew the lease for successive one-year periods "indefinitely and perpetually" so long as rent was paid and the land was used for "any lawful purposes in connection with the erection, maintenance, operation and repair of a gas booster station[.]" *Id.* at 116. After the lessee built a radio tower on the property, the lessor terminated the lease, claiming because of the perpetual renewal it was a tenancy at will,

9

and sued the lessee for damages for, among other things, trespass and breach of contract. *Id.* at 116-17. The lessee counterclaimed seeking a declaration the lease was not a tenancy at will and remained in full force and effect. *Id.* at 117. The trial court found in favor of the lessee on summary judgment, the Court of Appeals in Amarillo affirmed. *Id.* at 117-19. Citing to *Hull* and *Philpot,* among others, the court reasoned the language of the lease unequivocally expressing the lessee's right of renewal in perpetuity, coupled with the defined initial lease term *and* the defined renewal periods of one year, warranted enforcing the lessee's right of perpetual renewal as written. *Id.* at 118-19.

Distinctions arise, however, in leases with an indefinite and/or perpetual *initial* term. Lease agreements lacking a specific duration or end date are tenancies at will, terminable by either party. *1320/1390 Don Haskins Ltd. v. Xerox Commercial Solutions LLC*, 584 S.W.3d 53, 68 (Tex.App.— El Paso 2018, pet.denied)(*citing Providence Land Services, LLC v. Jones* 353 S.W.3d 538, 542 (Tex.App.—Eastland 2011, no pet.); *see also Fandey v. Lee*, 880 S.W.2d 164, 169 (Tex.App.—El Paso 1994, writ denied)(tenant at will holds possession of a premises by permission of an owner, but without a fixed term).

The courts in *Philpot* and *Haley* closely examined *Norman v. Morehouse*, 243 S.W. 1104 (Tex.Civ.App.—Amarillo 1922, writ dism'd), a case in which the Seventh Court of Appeals found a tenancy at will existed based on the indefiniteness of the lease's provisions, including its term. *See Philpot*, 633 S.W.2d at 548; *Haley*, 80 S.W.3d at 118. The lease at issue in *Norman* was part oral and written. The *Norman* lease described a term for "so long as either [Norman or his co-lessee engaged in the business of making and repairing harness [sic], shoes, etc." *Norman*, 243 S.W. at 1104. The Seventh Court found even if the entire agreement had been in writing, the lack of certainty as to the duration of the term, and no reference to a certainty, mandated the tenancy

10

be one at will and not a lease for years. *Id.* "[A] lease must as to its duration be certain or refer to a certainty" in order for it to be classified a lease for a number of years, rather than a tenancy at will. *Id.*

About a decade after *Norman*, the Texas Supreme Court decided *Holcombe*. There, the plaintiff-respondent had a rental agreement with the city of Houston to use and occupy a stall in the city market "for so long as he paid rent thereon and complied with the rules and regulations promulgated by the city of Houston for the operation of its city market[.]" *Holcombe*, 79 S.W.2d at 308. The city sought to evict him based on a city ordinance allowing the mayor and/or the city council the right to terminate leases of the tenants at the market at their will. *Id.* The plaintiff argued the city was not entitled to evict him and his lease with the city gave him the right to stay in the stall as long as he so desired, as long as he was paying rent and abiding by the market's rules and policies. *Id.* at 310. The Supreme Court reasoned the lack of a certain time or duration of the agreement between the plaintiff and the city, or reference to any certainty on which to base the agreement's duration, created only a tenancy at will. *Id.*; *see also Hill v. Hunter*, 157 S.W. 247 (Tex.Civ.App.—Austin 1913, writ ref'd). Further, the fact the plaintiff could terminate the tenancy and vacate at will supports the notion he was a tenant at will. *Id.*

Many years later, in *Effel*, the appellant leased a residential property "for the remainder of her natural life, or until such time as she voluntarily chooses to vacate the premises." *Effel,* 360 S.W.3d at 628. When the lessor attempted to have the appellant evicted after she constructed a fence on the property, she answered by pleading she had a life estate in the property and a lifetime lease. *Id.* at 629. The trial court concluded the lease at issue "created only a tenancy at will terminable at any time by either party." *Id.* at 630. The Fifth Court of Appeals agreed, citing other cases in which leases for the term of a lessee's life were deemed to be terminable at will due to the

uncertainty of the lessee's date of death. *Id.*, (*citing Nitschke v. Doggett*, 489 S.W.2d 335, 337 (Tex.Civ.App.—Austin 1972), *vacated on other grounds*, 498 S.W.2d 339 (Tex. 1973); *Kajo Church Square, Inc. v. Walker*, No. 12-02-00131-CV, 2003 WL 1848555, at \*5 (Tex.App.—Tyler April 9, 2003, no pet.)(mem. op.). The Fifth Court stated in no uncertain terms, "a lease for an indefinite and uncertain length of time is an estate at will." *Effel*, 360 S.W.3d at 630, (*citing Providence Land Servs.*, 353 S.W.3d at 542); *see also Sherrod v. Powell*, No. 10-10-000173-CV, 2012 WL 503651, at \*3 (Tex.App.—Waco Feb. 15, 2012, no pet)(mem. op.). It also reasoned the uncertainty as to the end date of the lease based on the lessee's life was further muddied by the tenancy's duration "'until such time as she voluntarily vacates the premises.'" *Effel* at 630. "If a lease can be terminated at the will of the lessee, it may also be terminated at the will of the lessor." *Id.* at 630-31, (*citing Holcombe*, 79 S.W.2d at 310).

### *Perpetual Renewal or Indefinite Initial Term?*

We turn to the question of whether the trial court erred in finding the parties intended to create a perpetual renewal lease, rather than a perpetual *initial* term lease. The parties agree and the trial court determined the lease language is unambiguous. Therefore, we need not look beyond the four corners of the lease to determine the intent of the parties. *See Forbau*, 876 S.W.2d at 133 (stating all parts of a contract must be read together to determine the parties' intent).

Muzquiz contends there can be no logical interpretation of the lease language other than finding it creates a perpetual term and thus a terminable-at-will agreement. In support, he cites to *Clear Lake City Water Auth. v. Clear Lake Utils. Co.*, 549 S.W.2d 385, 390 (Tex. 1977) and *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 842 (Tex. 2010). While both of the foregoing cases involve contracts with indefinite terms, they are not factually similar to this case as they involve a utility service contract and a perpetual performance contract, respectively,

12

rather than leases. *See Clear Lake City Water Auth.*, 549 S.W.2d at 390; *Kirby Lake Dev., Ltd.*, 320 S.W.3d at 842. Muzquiz also cites to *Holcombe* and *Effel* regarding Texas' policy treating leases for an uncertain period of time as tenancies at will. *See Effel*, 360 S.W.3d at 630; *Holcombe*, 79 S.W.2d at 310.

Muzquiz argues the Texas Supreme Court and Texas law, generally, do not recognize a difference between "fixed term lease[s] with a *perpetual renewal* clause . . . from a lease operating on a single *perpetual term*." In making this assertion, Muzquiz relies on *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 841 (Tex. 2000)(superseded by statute on other grounds)("We have previously stated that 'contracts which contemplate continuing performance (or successive performances) and which are indefinite in duration can be terminated at the will of either party'"). However, the *Fort Worth* case, similar to *Clear Lake City Water Auth.*, involves a performance contract to pay for right-of-way access, rather than a lease. *Id.* at 834-840 Furthermore, as discussed previously, Texas law does make a distinction between fixed-term leases with a perpetual renewal provision and perpetual initial term leases. *Compare Holcombe*, 79 S.W.2d at 310 *with Hull*, 574 S.W.2d at 612.

Para Todos counters the Lease's explicit perpetual term evidences the parties' unambiguous intent to create a perpetual lease and should be enforced in the same way the Seventh Court enforced the lease in *Philpot*. *Philpot*, 633 S.W.2d at 548. It claims the unambiguous language regarding the perpetual lease term, coupled with the Lease's requirement for Para Todos to use the property as a restaurant or any other legal purpose it chooses, constitutes an ascertainable date for termination of the perpetuity and accordingly should be enforced. *See id.* Para Todos also argues the Lease should be enforced as a periodic tenancy terminable solely at the will of the lessee and in that way is analogous to *Haley*, where a lessor executed a surface lease with an initial one-

year term with an option for the lessee to renew the lease for successive one-year periods "indefinitely and perpetually[.]" *Haley*, 80 S.W.3d at 116. In both *Philpot* and *Haley*, the expiration of the terms of the leases were tied to explicit use of land requirements. *See Philpot*, 633 S.W.2d at 548; *Haley*, 80 S.W.3d at 116. Each also contained a definite initial lease period. *See Philpot*, 633 S.W.2d at 548; *Haley*, 80 S.W.3d at 116.

We find the Lease language here is analogous with *Norman*, *Effel*, and the other cases where indefinite lease terms created a tenancy at will and not like the situations in *Hull*, *Philpot*, *Haley,* and the cases where the parties clearly intended to create a right of perpetual renewal. Turning to the Lease's language:

> TERM: Subject to and upon the conditions set forth herein, the term of this lease shall commence on . . . June 1, 2003 and shall be perpetual and terminable at Lessee's sole discretion upon thirty days written notice to Lessor. Lessor's assignees, assigns, heirs and executives are hereby bound, and Lessor agrees that same are bound, by the terms hereof. Lessee shall continuously use and occupy the leased premises for use as a restaurant and for such other lawful purposes as Lessee desires.

The paragraph heading is entitled "TERM." The Lease explicitly states "the term of this lease shall commence . . . June 1, 2003 and **shall be perpetual**." [Emphasis added]. The Lease does not address renewals or the term of the lease other than what is found in this paragraph. The Lease, as written, is only terminable by Para Todos, at their sole discretion, with no right of termination by Muzquiz. Further, Para Todos may continue their occupancy "in perpetuity" so long as they continuously occupy, use the premises as a restaurant, **or any other lawful purpose they desire**. In addition, Para Todos, under the lease, secured the right to assign the lease or sublet without the prior consent of Muzquiz. The Lease did not provide for any increase in the term rental for the premises from its inception in 2003. Under the Lease, Muzquiz is responsible for the maintenance of all external walls, roof and front parking lot; required to maintain insurance policies for loss or damage by fire; and could transfer his rights and obligations in the Building and the lease. Muzquiz

14

also paid the real property taxes.

Contrasting the Lease at issue here with the lease language found in *Hull*, *Philpot*, and *Haley*, leads to the conclusion the parties did not intend to create a lease with an initial fixed term and a right of perpetual renewal. *See Hull*, 574 S.W.2d at 612; *Haley*, 80 S.W.3d at 117-19. First, the Lease expressly states the term is "perpetual" and makes no reference to a right of renewal. *Holcombe* also dealt with a perpetual term, where a tenant at a city market leased a stall to sell his products for as long as he continued to pay the rent, and the Supreme Court of Texas held it to be a tenancy at will. *Holcombe*, 79 S.W.2d at 310. The indefiniteness of the Lease's "term" is also akin to the term of the lease-for-life in *Effel*, which ended either when Effel passed away or otherwise at her will, which the court deemed to be a tenancy terminable at will by either party. *Effel*, 360 S.W.3d at 630-31.

The Lease is also similar to the agreement found in *Norman*, whose lease termination date was based on when the lessees ceased "'engag[ing] in the business of making and repairing harness [sic], shoes,' etc." *Norman*, 243 S.W. at 1104. The vague condition of use of the premises in the *Norman* lease is much like the condition of use provision in the Muzquiz Lease, which allows Para Todos to occupy the premises "for use as a restaurant and for such other lawful purposes as Lessee desires." The Lease does not describe a term with a definite end date nor does it require a particular use of the premises the cessation of which would end the lease term.

Considering the lease explicitly contains an indefinite perpetual initial lease term with no defined end date nor any requirement tying the cessation of the lease to a specific use of the property, we find the trial court erred in determining the parties intended to create a lease with a right of perpetual renewal and in finding the Lease was not terminable at will by either party. *See Holcombe*, 79 S.W.2d at 310; *Effel*, 360 S.W.3d at 630-31; *Philpot*, 633 S.W.2d at 547-48. We

15

hold the trial court erred in finding the parties intended to create a lease with a right of perpetual renewal rather than a lease with an indefinite initial term. We hold the Lease creates a tenancy at will, terminable at will by either party.

Muzquiz's second issue is sustained. Further, we find the disposition of Muzquiz's second issue renders his first issue moot. *Amarillo v. R.R. Comm'n. of Texas*, 511 S.W.3d 787, 794 (Tex.App.—El Paso 2016, no pet.)("[W]hen an actual controversy no longer exists between the parties, 'the decision of an appellate court would be a mere academic exercise.'")(*quoting Beltran v. Beltran*, 324 S.W.3d 107, 110 (Tex.App.—El Paso 2010, no pet.)).

### Appellant's Third Issue: Substantive Unconscionability

Notwithstanding our finding the initial term is indefinite and therefore, terminable at will, we also find the Lease is substantively unconscionable as written. Muzquiz's third issue posits the trial court erred in finding the lease does not violate public policy. An examination of the public policy implications of the lease terms is inextricably intertwined with the issue of unconscionability. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 349 (Tex. 2008)(*citing Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 (Tex. 2006). The trial court affirmatively found the Lease was not unconscionable and Muzquiz raised the issue on appeal.

### *Standard of Review*

As Muzquiz correctly states in his brief, "[w]hether a contract is contrary to public policy or unconscionable at the time it is formed is a question of law. Because a trial court has no discretion to determine what the law is or apply the law incorrectly, its clear failure to properly analyze or apply the law of unconscionability constitutes an abuse of discretion." *Poly-America*, 262 S.W.3d at 349, (*citing Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).

Muzquiz argues it is against public policy to treat the Lease as anything other than a tenancy

16

at will, considering its indefinite nature and Texas law. Having already determined the Lease language creates a tenancy at will, we turn our discussion to the substantive unconscionability of the Lease.

*Analysis*

Contracts offending the conscience are "an exception to the freedom that generally pervades contract law." *Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 228 (Tex. 2014). Normally, Texas Courts do not look at the fairness of a contract or why it was created. *Id.* Unambiguous contracts, in particular, "are presumed to reflect the intent of the contracting parties and are generally enforced as written" regardless of whether one party puts himself in a bind as a result. *Id.* However, "grossly unfair bargains should not be enforced." *Id.*

Texas recognizes both procedural and substantive unconscionability. *Delfingen US-Tex., L.P. v. Valenzuela*, 407 S.W.3d 791, 797 (Tex.App.—El Paso 2013, no pet.). Substantive unconscionability refers to the inherent unfairness of a particular contract or provision; procedural unconscionability deals with the circumstances surrounding a contract's adoption. *Id.* A contract or contract provision can be found unenforceable based on egregious facts supporting either procedural or substantive unconscionability. *Id.*, (where arbitration agreement was deemed procured using procedurally-unconscionable means and thus found unenforceable); *ReadyOne Industries, Inc. v. Lopez*, 551 S.W.3d 305, 314 (Tex.App.—El Paso 2018, no pet.)("Unconscionability . . . may exist in one or both of two forms: (1) procedural unconscionability, . . . and (2) substantive unconscionability . . . .").

As the Texas Supreme Court stated,

Unconscionability . . . is not easily defined. The term defies a precise legal definition because 'it is not a concept, but a determination to be made in light of a variety of factors not unifiable into a formula.' . . . Although difficult to define, the defense has a long history. One of the earliest decisions to apply the defense

17

described an unconscionable contract as one that 'no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.' [Internal citations omitted].

*Venture Cotton*, 435 S.W.3d at 228. In assessing whether a contract is unconscionable under the totality of the circumstances, we consider: "(1) the 'entire atmosphere' in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the 'non-bargaining ability' of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable." *Delfingen*, 407 S.W.3d at 798. "The grounds for substantive abuse must be sufficiently shocking or gross to compel the court to intercede[.]" *Id*. A contract is substantively unconscionable where its inequity shocks the conscience. *Ridge Natural Resources, LLC v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 131 (Tex.App.—El Paso 2018, no pet.). Contracts deemed unconscionable are unenforceable. *Poly-America*, 262 S.W.3d at 348.

In *Ski River Development, Inc. v. McCalla*, 167 S.W.3d 121 (Tex.App.—Waco 2005, no pet.), a jury found a lease, its first addendum and two amendments were procured as a result of unconscionability. *Id.* at 137. The Waco Court of Appeals, upholding the jury's findings on this issue, found a number of evidentiary points to support their finding regarding substantive unconscionability, including that the lessors had to pay for all the real estate taxes for the lease's 99-year term; the lessees paid $3,000 per month for the first twelve-and-one-half years of the lease, after which time they only paid $75 per month, which is less than the estimated real estate taxes borne by the lessor; the lessees had the sole right to terminate; the lessors lost virtually all possessory rights of the premises; and a clause in the lease prevented the lessors from selling the land while the lease was in effect. *Id.* at 138-139.

We find the substance of the Lease at issue here analogous to the offending lease terms in

18

*Ski River* and thus substantively unconscionable. Turning to the Lease's language:

> TERM: Subject to and upon the conditions set forth herein, the term of this lease shall commence on . . . June 1, 2003 and shall be perpetual and terminable at Lessee's sole discretion upon thirty days written notice to Lessor. Lessor's assignees, assigns, heirs and executives are hereby bound, and Lessor agree that same are bound, by the terms hereof. Lessee shall continuously use and occupy the leased premises for use as a restaurant and for such other lawful purposes as Lessee desires.

The paragraph heading is entitled "TERM." The Lease explicitly states "the term of this lease shall commence on . . . June 1, 2003 and **shall be perpetual and terminable at Lessee's sole discretion**[.]" [Emphasis added]. The Lease, as written, is only terminable by Para Todos, at their sole discretion, with no right of termination by Muzquiz and binding upon his "assignees, assigns, heirs and executives[.]" Further, Para Todos may continue its occupancy "in perpetuity" so long as they continuously occupy, use the premises as a restaurant, **or other lawful purpose they desire**. In other words, Para Todos can operate any type of lawful business on the premises it wishes, so long as it is paying rent, forever. In addition, Para Todos, under the lease, secured the right to assign the lease or sublet without the prior consent of Muzquiz.

The Lease did not provide for any increase in the annual rent amount for the premises from its inception in 2003. Thus, regardless how much property values in the area have or will continue to increase, Para Todos would never have to pay more than the amount specified in the Lease. The Lease also requires Muzquiz to pay for maintenance of all external walls, the roof and front parking lot; as well as maintain insurance policies for loss or damage by fire. Muzquiz also has to pay the real property taxes. According to the testimony at trial, Muzquiz anticipates repair expenditures of approximately $120,000 within the next ten years, on top of property taxes which increase continually and are almost enough to eclipse the total amount of rent he receives each year such that he would sustain a loss to cover them. Thus, in the worst-case scenario for Muzquiz, Para Todos could sublet the space for significantly more money than it pays each month and earn a

19

substantial profit in perpetuity for doing absolutely nothing and undertaking zero risk, so long as it continues paying the modest required rent amount to Muzquiz or his descendants, while Muzquiz and his progeny lose substantially more money every year for as long as Para Todos continues the lease. Even in the best-case scenario for Muzquiz under the Lease terms, he testified he will likely be losing money on what should be income property in the immediate future as a result of increasing property taxes and insurance premiums, which could continue for generations. Additionally, the burden imposed by the Lease on the lessor is so great and the benefit so meager, we think it highly unlikely Muzquiz would be able to convey the property because there is no advantage to a potential purchaser to do so.

We find the terms of the Lease to be so one-sided and grossly unfair that no person in his or her right mind would have agreed to the position in which Ms. Grimaldo put herself and her successors. *See Venture Cotton*, 435 S.W.3d at 228; *Poly-America*, 262 S.W.3d at 348. The evidence at trial demonstrates unfair terms in the contract, gross disparity in the value exchanged between the parties, little benefit to Muzquiz and Grimaldo before him, and lease terms which shock the conscience. *See Ski River*, 167 S.W.3d at 139. Each of these factors contributes to our holding the lease, as a whole, is unconscionable and unenforceable. *Poly-America*, 262 S.W.3d at 348. We therefore find the trial court erred in finding Muzquiz did not meet his burden to prove unconscionability and sustain Appellant's third issue.

### Cross-Appellant's Sole Issue: Limitations

Having sustained two of Muzquiz's three issues on appeal, we move on to Para Todos' cross-appeal. In its sole issue, Para Todos claims the trial court erred in finding Muzquiz's declaratory judgment action was not barred by the statute of limitations. We find the trial court did not err in determining Muzquiz filed his lawsuit within the applicable statute of limitations and

20

overrule Para Todos' issue on cross appeal.

The parties agree the residual four-year limitations period applies. *See* TEX.CIV.PRAC.&REM. CODE ANN. § 16.051. The real issue is when Muzquiz's claim accrued to determine at what point the limitations clock began running. As the party asserting the limitations defense, Para Todos bears the burden of pleading and proving (1) the date the limitations period commenced, also known as its accrual date, and (2) the suit was filed outside of the requisite limitations period. *In re Estate of Denman*, 362 S.W.3d 134, 144 (Tex.App.—San Antonio 2011, no pet.).

Para Todos contends a justiciable controversy arose at the time the lease was executed, which it bases on case law analyzing contract reformation claims based on mutual mistake. *See Kenney v. Porter*, 604 S.W.2d 297, 306 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Trahan v. Mettlen*, 428 S.W.3d 905, 909-11 (Tex.App.—Texarkana 2014, no pet.). It also cites to a Fort Worth Court of Appeals case which states, "[A] person who signs a contract must be held to have known what words were used in the contract and to have known their meaning, and he must be held to have known and fully comprehended the legal effect of the contract." *Wee Tots Pediatrics, P.A. v. Morohunfola*, 268 S.W.3d 784, 791 (Tex.App.—Fort Worth 2008, no pet.).

Muzquiz counters Para Todos' position, noting suits brought under the Declaratory Judgment Act accrue once there is "an actual dispute or controversy between the parties." *HSM Wynngate 04, Ltd. v. Tex. Sotherby Homes, Inc.*, No. 02-15-00281-CV, 2016 WL 4540492, at *3 (Tex.App.—Fort Worth Aug. 31, 2016)(mem. op.). Since the controversy between the parties here did not arise until October 26, 2015, when Muzquiz challenged the lease, he alleges his claim accrued at that time.

Having determined the lease is terminable at will and, additionally or in the alternative,

21

substantively unconscionable and thus unenforceable, Para Todos' argument fails. We find this is a somewhat unique situation where there is not an underlying "cause of action" upon which Muzquiz brought his lawsuit. While he did file suit for breach of contract in addition to his declaratory judgment claims, the crux of the controversy in the declaratory judgment action was the Lease's unenforceability as written and/or seeking a declaration regarding its rights under the explicit terms. The question of validity or construction did not arise until Muzquiz sought to terminate the lease and renegotiate it, which Para Todos refused to do.

The dissent posits that Muzquiz's claim is most like a deed reformation case because it asked the trial court to add a term to the Lease which was not part of the original agreement. Justice Alley compares the instant case to *Cosgrove v. Cade*, 468 S.W.3d 32 (Tex. 2015), where a plaintiff sought to sell his property but expressly reserve his mineral rights. *Id.* at 35. The deed mistakenly transferred the property in fee simple. *Id.* More than four years passed following the sale, and the sellers asked for a correction deed, but the buyer refused. *Id.* The Texas Supreme Court sided with the buyer based on their assertion of limitations and reversed the Fort Worth Court's decision in favor of the seller.

We find *Cosgrove* and other cases like it distinguishable. Unlike the dissent suggests, Muzquiz is not seeking to add a terminable-at-will provision to the Lease, or even correct a mistake in the Lease. Rather, he is seeking a declaration that the Lease terms *as written* necessarily render it terminable at will and/or void. The declaration sought did not become a live controversy until Muzquiz attempted to terminate the lease on October 26, 2015, and the lawsuit was filed September 27, 2016, well within the four-year period from the time a claim accrued under the Declaratory Judgment Act. *See HSM Wynngate 04, Ltd.*, 2016 WL 4540492, at *3.

We affirm the trial court's ruling that Para Todos failed to meet its burden on its statute of

22

limitations defense to Muzquiz's claims. Cross-Appellant's sole issue is overruled.

## CONCLUSION

We sustain Appellant's second and third issues and find his first issue rendered moot. We overrule Cross-Appellant's sole issue.

We revere the trial court's judgment as to Appellant/Cross-Appellee Joe Frank Muzquiz and remand for further proceedings consistent with this opinion. We further affirm the judgment as to Appellee/Cross-Appellant Para Todos, Inc.

March 31, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.
Alley, J., Dissenting